ALBERT C. GREENE & others, Trustees, *v.* JAMES MUMFORD & THOMAS ARNOLD, Collectors of Taxes.

A bill of interpleader cannot be maintained, unless where the same debt or duty is severally claimed of the plaintiff by two or more persons, and where the plaintiff has no interest in the success of either, but is a mere stakeholder for the respective claimants.

It would seem, therefore, that such a bill cannot be maintained by trustees when the trust property is taxed in two different towns, against the respective tax collectors of those towns, to compel them to litigate the right to tax the same property with each other, the tax in one town being different from and larger than the tax in the other; and it certainly cannot be, where it appears, that the trust property is partly taxable in the one, and partly in the other town, and so, is subject to a double liability.

Bills of interpleader are not encouraged, on account of the delay and expense which they occasion.

By the express direction of the 15th section of the tax act of 1855, trust property, the income of which is to be paid to any person, shall be to that extent assessed against the trustee, in the town in which such beneficial owner resides; but to the extent that the trust fund is to accumulate, by the provisions of the trust, and to be differently distributed according to certain contingencies still pending, it must be regarded, for the purposes of taxation, as the property of the trustees, and be taxed to them, under the general direction of the 8th section of the same act, as owners of the same, in the town in which they reside.

Where trust property, partly liable to be taxed in one town, and partly in another, is taxed in both, as if wholly taxable in each, and it does not appear that the trustees brought in to the assessors of taxes in either town an account, under oath, of the ratable estate in their hands as trustees, according to the requirement of the 5th section of the tax act of 1855, it is an ordinary case of over taxation, for which, by the last clause of that section, they can have no remedy whatsoever.

Trustees are entitled to apply to a court of equity for such instructions as are proper for a court of equity to give, as depending upon the construction of the instrument creating the trust, or dependent upon considerations of a purely equitable nature; but are not entitled to come to a court of equity for the solution of mere questions of law, such as the construction of a tax act in its application to the trust fund, about which they should take the advice of counsel, and if necessary, test by the decision of the proper tribunal for such questions—a court of law.

Where, however, an interpleading bill was filed by trustees, in a supposed case of double taxation of the trust fund, against the respective tax collectors of two towns, both of which had taxed the trust fund, and had been suffered to go on without demurrer, by a

Greene & others, Trustees, *v.* Mumford & another, Collectors of Taxes.

kind of consent, to the solution of the questions pending between the towns and the trustees, and had thus been made to serve the turn of all parties to it, it was dismissed without costs.

BILL IN EQUITY.　The bill was filed by Albert C. Greene, George Larned, and Charles F. Tillinghast, all of Providence, trustees under the will of Samuel Larned, late of Providence, deceased, against James Mumford, collector of taxes of Providence, and Thomas Arnold, collector of taxes of Warwick, in the county of Kent, for the year 1855, to compel the two defendants to interplead with each other, and for an injunction and instructions.　The bill alleged, that said Samuel Larned, on the 28th day of November, 1846, made his last will and testament, a copy of which was annexed to the bill, wherein, amongst other things, he devised and bequeathed to the complainants, as joint tenants, the proceeds of the sale of certain real and personal estates in trust, to invest the same in the capital stock of one or more of the incorporated banks in this state, or in real estate or in mortgages on real estate in this state, and to receive the dividends and interest thereof, and to pay therefrom the annual sum of $25 to Betsey S. Taylor during her life, the quarterly sum of $60 to his sister, Sarah S. Larned, during her life, the annual sum of $500 to his wife, Celia Greene Larned, the guardian of his daughter, Catharine Celia Larned, until his daughter attained the age of five years, and thereafter, during her minority, the same sum annually, with an annual increase of $100, until she attained to the age of thirteen years, when the said annuity should be the sum of $1,200, payable to her said guardian, quarterly, for her use during her minority, if she remained unmarried; and, upon her attaining the age of twenty-one years, the said annuity to be paid to her whilst she remained unmarried; and in case of the marriage of his said daughter, the testator directed that the said trustee should pay to her during life, to her sole and separate use, the whole of the rents, dividends, interest, or other income of the trust fund, subject, however, to the payment of expenses, &c. the annuities, and a certain sum given by the will for the erection of churches, and before directed to be paid.　The will then provided for the contingency of the death of the daughter, leaving a child or children,

Greene & others, Trustees, *v.* Mumford & another, Collectors of Taxes.

directing the trustees to appropriate so much of the income as should be necessary, to the support of such child or children, until the youngest should attain the age of twenty-one years, at which time, the trust was to terminate, and the trustees were to convey the trust property to such child or children in fee or absolute property. The will also provided for the contingency of the death of the daughter without children living at the time of her death, in which event the trustees were directed to pay to the wife of the testator, if unmarried, the sum of $500, annually, so long as she should remain unmarried; and also certain pecuniary legacies and annuities to the different members of his family, and, reserving a sufficient sum for the payment of the annuities provided for in his will, to distribute the rest and residue of the trust funds amongst the testator's heirs at law in the proportions to which they would be entitled under the statute of distributions. The will further directed that the trustees should, from time to time, invest, for the purposes of the trust, any surplus income of the trust funds in the same manner as they were before directed to invest the capital thereof. The bill stated the death of the testator in December, 1846, the probate of his said will, the acceptance of the office of trustees by the plaintiffs, and that afterwards, and before the year 1855, they received from the executors of the will, divers sums of money which they had invested partly in stock of incorporated banks of the city of Providence, and partly in mortgages on real estate situated principally in Providence, and a small portion in mortgages on real estate situated in the towns of Cranston, Bristol, and South Kingston in the state of Rhode Island,—that they had, from time to time, received the dividends and interest of said investments and appropriated the same, and have invested the surplus of the same, according to the directions of the will; that the annuitants, Betsey S. Taylor, and Sarah S. Larned are now living, and in the year 1855 did reside, and do now reside in the city of Providence; that the daughter of the testator, Catharine Celia Larned, is living, unmarried, and that the annuity payable to her guardian for her use, under the will of her father,—she being upwards of thirteen years of age,—is $1,200; that since the death of the testator, his widow has intermarried

Greene & others, Trustees, *v.* Mumford & another, Collectors of Taxes.

with Richard W. Greene, of Warwick, in the state of Rhode Island, and that the said Catharine Celia Larned resides with her mother and the said Richard, who live a portion of the time in Warwick, and a portion of the time in Providence, her mother having been in 1847 appointed guardian of the person and estate of said Catharine.

The bill further stated, that until the year 1855, the trust estate had been assessed for and had paid taxes in the city of Providence, and that in that year it was assessed for taxes in said city, on an estimate of $50,000, in the sum of $337.50, for which demand had been made by the defendant, Mumford, as collector of taxes for said city; that in and for the same year, the trust estate was assessed by the town of Warwick for taxes, to the amount of $150, on an estimate of $60,000, and that demand had been made therefor by the defendant, Arnold, as collector of taxes for said town; that Mumford, the collector for Providence, on the 21st day of May, 1856, attached on his warrant, twelve shares of the capital stock of the Arcade Bank in Providence, part of the trust estate, and had advertised the same for sale on the 28th of June, 1856, for the payment of the tax assessed on the trust estate by the city of Providence.

The bill then alleged, that the plaintiffs, as trustees, are willing and desirous to pay all such taxes as may be legally payable by said trust estate, and that the trustees have brought into court the sum of $——, for the payment of taxes to such of the claimants as may be entitled to the same by the judgment of the court; that said trust estate is not liable to be taxed both by the city of Providence and the town of Warwick; that the plaintiffs are ignorant to which of the collectors they are legally bound to pay the said taxes for the year 1855, and that they cannot safely pay the same to either, without the advice and direction of the court; and they pray that the two collectors may be decreed to interplead and adjust their said several claims and demands between themselves; that they be severally enjoined, in the mean time, from proceeding at law to collect their said several taxes, and the defendant, Mumford, be enjoined from selling the bank stock attached by him on his warrant, until further order, and for general relief.

Upon the filing of the bill, the two collectors of taxes submitted, by consent, to an injunction against proceeding to collect the several taxes mentioned in the bill, until further order, and severally filed answers, which, in substance, admitted the facts stated in the bill, and submitted the question, whether said trust estate is to be taxed in the city of Providence or in the town of Warwick, to the court; the city of Providence claiming that the whole trust estate is to be taxed in Providence, and the town of Warwick, that said trust estate, and especially that portion of it out of which the annual sum of $1,200 payable to Catharine Celia Larned, a resident of that town, is raised, should be taxed in the town of Warwick.

The cause, came on to be heard upon bill and answer, and was shortly argued by *Clarke*, city solicitor, for the city of Providence, and *Currey*, for the town of Warwick.

Ames, C. J. The case stated in the bill is certainly not a case for a bill of interpleader, or a bill in the nature of a bill of interpleader, nor for an injunction. If a preliminary injunction was ordered it must have been by consent; and the files afford no proof that, even in that form, any such order received the sanction of the court. Indeed, notwithstanding the cases of *Thomson* v. *Ebbets*, Hopk. 272, and *Mohawk, &c. R. R. Co.* v. *Clute & others*, 4 Paige, 384, it may be very much doubted, at least, whether in case of taxation of the same property in two towns, where, as here, the amount of the tax in one town is upwards double of what it is in the other, the plaintiff, according to the undisputed definition of a case for interpleader, is in a condition to say, with Lord Cottenham, when explaining what such a case must be, " I have a fund in my possession, in which I claim no personal interest, and to which you, the defendants, set up conflicting claims; pay me my costs, and I will bring the fund into court, and you shall contest it between yourselves;" per Lord Cottenham, *Hoggart* v. *Cutts*, 1 Craig. & Phillips, 18 Eng. Cond. Ch. R. 204, 205. The plaintiff, in such a case as this, is certainly not, as Sir John Leach has said, that the plaintiff in interpleader must be, " the holder of a stake which is equally contested by the defendants, and as to which the plaintiff *is equally indifferent* between the parties." *Mitchell*

27 *

Greene & others, Trustees, *v.* Mumford & another, Collectors of Taxes.

v. *Hayne*, 2 Sim. & Stu. 1 Eng. Cond. Ch. R. 63. He is, on the contrary, interested in the question at issue to the whole amount of the difference between the two taxes, as, in the case just cited he was interested, as an auctioneer, in his commissions which he claimed to deduct from the amount of the purchaser's deposit in his hands; and it seems to us difficult to perceive why, if a bill of interpleader would not lie in the one case, it can be maintained in the other. See *Moore* v. *Usher*, 7 Simons, 383; S. C. 10 Eng. Cond. Ch. R. 110; *Bignold* v. *Audland*, 11 Simons, 24. In this case, the amount which the bill states is brought into court, is left in blank; so that for aught that appears, it is the lesser sum, the amount of the tax in Warwick, which he claims to be the stake in this case; an amount, which would not half satisfy the tax assessed against the trust fund in Providence. The *same* debt or duty, either in a metaphysical or in a substantial sense, is not claimed by the collectors of the two towns in this case, an indispensable condition to compelling them, as officers of their respective towns, to litigate with each other, instead of with the plaintiffs. Adam's Equity, 203, 204, side. And when we consider that the filing of bills of interpleader, on account of the delay and expense they must occasion, ought not to be encouraged; (a reason which applies with peculiar force to the collection of taxes, the proceedings to which are, for good cause, made as prompt, cheap, and efficacious as possible,) we see ground enough for the doubt we have expressed as to the decisions on this subject in New York. In *Bedell* v. *Hoffman*, 2 Paige, Ch. R. 201, Chancellor Walworth, after saying that bills of interpleader ought not to be encouraged, adds, " and they should never be brought except in cases where the complainant can in no other way protect himself from an unjust litigation, *in which he has no interest.*"

But however this may be, there is a fatal objection to this bill, as a bill of interpleader, and one which is equally fatal to it, as presenting a case which requires the injunctive process of the court. " The office of an interpleading suit," says Sir James Wigram, in *Crawford* v. *Fisher*, 1 Hare, 23 Eng. Cond. Ch. R. 441, " is not to protect a party against a double liability, but against double vexation in respect to one liability. If the cir-

cumstances of the case show that the plaintiff is liable to *both* claimants, that is no case for interpleader. It is of the essence of an interpleading suit, that the plaintiff shall be liable to one only of the claimants; and the relief which the court affords him is against the vexation of *two* proceedings on a matter which may be settled in a single suit;" and see *Crawshay* v. *Thornton*, 1 Myl. & Cr. 14 Eng. Cond. Ch. R. 1; *Suart* v. *Welch*, 4 ibid. 18 Eng. Cond. Ch. R. 305; *Jew* v. *Wood*, 1 Cr. & Ph. 18 Eng. Cond. Ch. R. 185; *Desborough* v. *Harris*, 31 Eng. L. & Eq. R. 592, 595.

Now, in the case stated in the bill, and admitted by the answers, it is evident that this trust fund was, in and for the year 1855, liable to be assessed for taxes, both in the city of Providence and in the town of Warwick. In the former, it was liable to be taxed for the amount thereof out of which issued the income, by way of annuities, payable according to the direction of the will, to Betsey S. Taylor and Sarah S. Larned, then and now, as it appears, residents of Providence; and in the latter, for the amount thereof out of which issued in that year the income payable to, or for the use of the testator's daughter, Catharine Celia Larned, then and now a resident with her mother and guardian, Mrs. Richard W. Greene, in Warwick. This appears, under the facts stated by the bill and admitted by the answers, from the express provision of the 15th section of the tax act of 1855. Again, the trust estate was also, in our judgment, taxable in the city of Providence, as the place of residence of the trustees, for the remaining capital of the trust fund, not needed to raise the annual sums aforesaid, including the addition thereto, up to that time, from surplus income. As to this portion of the trust fund, which, by the direction of the will, was to remain and accumulate in the hands of the trustees, awaiting the contingencies in the will specified, and hereafter to take different directions according to those contingencies, as no income was then payable from it to any person, and especially as it does not appear to whom it will be payable, it must be regarded, for the purposes of taxation, as in the ownership of the trustees, and taxable, therefor, under the 8th section of the act aforesaid, in the city of Providence, where the bill and

Greene & others, Trustees, *v.* Mumford & another, Collectors of Taxes.

answers agree that they reside. We follow the reasoning of the city solicitor of Providence in application to this case, that the trustees, as the legal owners, are to be taxed, under the 8th section, for the trust property, where *they* reside, except as to the amount of the same, the income of which is paid to any other person; when, by the express words, as we construe them, of the 15th section, that amount is to be assessed against the trustee in the town in which that person resides. Who might be considered the " owner" of the accumulating capital, under the 8th section of this act, if instead of its direction being wholly uncertain and contingent, as in this case, the will ascertained some person as the fixed and certain beneficial owner thereof, the case before us does not require us to decide. As the 18th section of the act provides that the property named in that section " *and no other* " shall be exempt from taxation, and as trust property of this character is not comprised in the property therein exempted from taxation, this property must be taxed in some town, and where the *owner* of it resides. Our conclusion is, that the *legal* owner must be regarded as the owner designated by the 8th section, until, at least, by the determination of the contingencies named in the will, the beneficial owner of this accumulating fund is ascertained.

It appears, then, that the trustees of this fund were liable, in the year 1855, to be assessed for taxes in the city of Providence for that portion of the fund which was accumulating to await, for its direction, the contingencies appointed therefor by the will, as well as for that portion out of which issued the income payable, under the will, to Betsey S. Taylor and Sarah S. Larned, residents of Providence; and were, in the same year, liable to be assessed in the town of Warwick for that portion of the trust property out of which issued the income payable to Catharine Celia Larned, a resident of that town. This, of itself, as we have seen, would be sufficient to disentitle the trustees from compelling, by a bill of interpleader, the tax collectors made defendants, to litigate their respective rights, as officials, to the several taxes for that year included in their several rate-bills, with each other, and allow the trustees, with their costs paid, to sit as spectators, and award, as it were, the prize to the conqueror in

Greene & others, Trustees, *v.* Mumford & another, Collectors of Taxes.

the fight. But the case does not stop here. Liable to be taxed in both Providence and Warwick for the trust property in their hands, it does not appear from the bill or answers, that they brought in to the assessors of taxes in either town, an account, under oath, of the ratable estate; in their hands as trustees, according to the requirement of the 5th section of the tax act in question; in which case, the last clause of that section provides, that " if over taxed" they " shall have no remedy therefor." This case cannot be distinguished from any other case of over taxation, where the persons assessed have property for which they are liable to be assessed at all. It is the ordinary case of over taxation, from over valuation, where the person assessed has neglected to bring in an account, including the value, of his ratable estate in which case, as occasioned by his neglect under the law, the statute cuts him off from *all* remedy, both at law and equity. *Bates* v. *City of Boston*, 5 Cush. 93, and cases cited. From this, it appears, that the plaintiffs are liable to pay both the taxes assessed against them in the year 1855, on account of this trust fund; the one to the city of Providence, and the other to the town of Warwick. Grant, that upon the facts stated in the bill, provided the facts had been made known to the assessors of the respective towns in the statute mode, the over taxation stated in the bill and answers would, in the language of the supreme court of Massachusetts, in the last cited case, have been " irregular and wrong," still, it must be regarded as a case in which " the plaintiffs have not put themselves in the way to obtain redress." This view of the case is, of course, decisive against the present bill, whether regarded as a bill of interpleader, or a bill requiring or admitting the aid of the court by way of injunction against the defendant tax collectors; the one of whom, in levying upon his warrant, and the other, in demanding his tax, were but engaged in the performance of their bounden official duty under the law.

Regarding this bill in the last aspect in which it presents itself to us, as a bill filed by trustees for instructions, we are equally at a loss to perceive any ground upon which, with propriety, we can entertain it. It is true that trustees have an undoubted right to come to a court of equity for its assistance

and protection in all cases of doubt and difficulty in the administration of the trust; and where legal proceedings have been commenced against them, are entitled to receive directions from the court, as to the mode of defence, if any, to be adopted, and in proper cases to a stay of proceedings even, in the mean time. Hill on Trustees, ch. 4, p. 543 side. We apprehend, however, that the jurisdiction of the court to give, or rather the propriety of the application of a trustee to a court of equity for instructions, depends upon the nature of the information needed, whether it be such as is fit for a court of equity to give, as turning upon the construction and effect of the instrument by which the trust is created, or upon considerations of a peculiarly equitable nature. The same restriction must be applied to the propriety of an application to the court by trustees for its aid, by injunction, to stay proceedings at law against them. The ground upon which, in *Edgecombe* v. *Carpenter*, 1 Beavan, 17 Eng. Cond. Ch. R. 171, Lord Langdale, as master of the rolls, enjoined, on the petition of the trustee, a suit in ejectment brought by the heir at law to recover possession of a devised estate, seems to have been, that he had commenced the suit at law whilst a suit was pending and proceeding in equity, to which he was party defendant, brought by those entitled under the will to establish the will and remove the trustee. There was, it is true, a special difficulty in that case growing out of the fact that it was an application by petition made by a defendant against his co-defendants; and the special circumstances relied on by the learned judge to overcome this, formed a subject of separate consideration by him, in his opinion; but no one can read the opinion without perceiving, as might be supposed, that something more was required, in the judgment of his honor, to entitle the trustee to the protection and direction of the court, than the mere institution against him of a suit at law relating to a matter connected with or growing out of the execution of the trust. Certainly, under the largest interpretation of the power and duty of a court of equity to instruct and aid trustees, it cannot be considered that such a court is to be applied to to answer mere questions of law, properly resolvable by courts of law, or to stay actions at law for the

Greene & others, Trustees, *v.* Mumford & another, Collectors of Taxes.

collection of debts incurred by trustees, or more especially, summary statute proceedings instituted for the collection of taxes assessed against the trust estates. If, in ordinary matters of law, a trustee desires advice, he is entitled to obtain it at the expense of the trust fund, from a counsellor at law, or to bring or to defend, as the case may be, a suit at law for the purpose of ascertaining his legal rights; but it cannot be proper for him in such a case, especially one involving no great doubt or difficulty as to his duty as trustee, to come to the court, as he must, at the expense and delay of a bill, to ask questions, which if they raised any grave doubts, the court itself would, according to its course, ask a court of law to resolve for them. In such a case as the case at bar, for instance, instead of filing this bill, the cheap, ordinary course of paying these taxes under protest, and then commencing, if the case justified it, actions at law against the city of Providence and town of Warwick, either or both, would have been the amplest and best remedy, if there were any, that could have been devised.

These remarks are made, however, in no spirit of censure upon the course adopted by the trustees in this particular case, because, by the real or supposed injunction submitted to by the defendants by consent, by the frame of the bill and answers, and by the whole conduct of the cause, it is evident, that this suit was instituted, by an arrangement between the plaintiffs and the defendants, for the purpose of eliciting the opinion of the court upon the construction of the tax act of 1855, in its application to the peculiar position of the trust fund in question, under the will made part of the pleadings before us.

In this view of the bill, it has certainly answered the purpose of the parties; and we have endeavored, in considering the questions properly arising upon the pleadings, to answer those which were spoken to by the counsel, in order that, so far as our opinion will effect it, there may be an end to litigation as to the taxes to be assessed against this trust estate. Such a view of the bill cannot, however, affect the disposition, which, under rules long established to guide us, as a court of equity, in the exercise of our jurisdiction, we are bound, since the matter has been laid before us, to make of this cause.

This bill must be dismissed without prejudice; but, as it has not been demurred to, as it should have been if an adversary suit, and has, by being answered, been made to serve the turn of all parties to it, it must be dismissed without costs.