DEFORD *et al.* v. MERCER *et al.*[*]

1. Guardian's sale: CORRECTION OF MISDESCRIPTION : PRESUMPTION. Where the petition of a guardian, to sell the real estate of his wards, contained a mistake in the description of the lands, which it is shown was corrected after the petition was drafted, it will not be presumed, in the absence of evidence, that such correction was not made until after the filing of the petition.

2. —— ESTOPPEL: CASE FOLLOWED. Where heirs after arriving of age, with full knowledge of all the facts, and in the absence of fraud or mistake of fact, receive and retain the purchase-money arising from the sale by their guardian of their interest in certain lands, they are thereby estopped from questioning the validity of such sale on the ground of a defect in the proceedings. The case of *Pursley* v. *Hays* (17 Iowa, 310) followed.

3. —— VOID AND VOIDABLE SALES. Nor is this principle limited to cases of voidable sales, but extends to those where the sale is void.

4. Equity: REFORMATION OF QUITCLAIM CONVEYANCE. A court of equity will so reform a conveyance, founded on a consideration, as to correct a mistake in the description therein, though the deed is but a quitclaim and contains no covenants.

*Appeal from Polk District Court.*

THURSDAY, JANUARY 30.

GUARDIAN'S SALE: EQUITABLE ESTOPPEL FROM RECEIPT OF PURCHASE-MONEY BY WARD: CORRECTION OF DEED, ETC. — The plaintiffs are the heirs at law, and the assignees of such heirs, of Hugh Pursley, deceased. The present petition, which is in equity, was filed June 30, 1863. Plaintiffs claim the title to the south-west quarter of the northeast quarter of sec. 5, township 78, range 24, of which the said Hugh was the owner at the time of his death. It is material to state that the petition sets up that the said property was sold by J. C. Jones as guardian of the minor heirs of Hugh Pursley, and attacks the validity of such sale. Defendants claim title to a portion of said premises under said sale by Jones, as guardian. It was sold under the same proceedings and order of sale which are set out in case of *Pursley* v. *Hays* (22 Iowa, 11), to which case reference is made for a full statement of facts respecting the guardian's application to sell, and the proceedings subsequent thereto. On the hearing of this case the court granted a portion of the relief prayed by the plaintiffs, but it decided against the plaintiffs as follows: "That complainants' bill, so far as it attacks and seeks to set aside the sale of said real estate, or any part thereof made by J. C. Jones, as guardian of the minor heirs of Hugh Pursley, deceased, under the order of the County Court of Polk county, Iowa, of date the 3d of August, A. D. 1852, be, and the same is hereby, dismissed."

The court having thus decided that the plaintiffs were not entitled to have the guardian's sale set aside, accordingly confirmed, on defendant's cross-bill, their title to the property in question.

Plaintiffs appeal.

*B. N. Kinyon* for the appellants.

*Polk & Hubbell* for the appellees.

DILLON, Ch. J. — It is not necessary to discuss or examine any questions respecting the guardian's sale, which were decided in the case of *Pursley* v. *Hays* (22 Iowa, 11). That case was very elaborately argued and deliberately considered. Under the course of decision in this State respecting administrators' and guardians' sales, it was held that the sale by Jones, as guardian, was valid, as against the various objections in that case made against it. This cause has reference to another tract of land of which the said Hugh Pursley, deceased, was, at the time of his death, the owner; but this tract was sold by the said Jones under the same order or license of the County Court (August 3, 1852), referred to in the Hays case.

1. GUARDIAN'S SALE: correction of misdescription: presumption.

The land owned by Pursley and claimed in the present suit is the south-west quarter of the north-east quarter of five, etc. It is claimed that Jones' petition, as guardian, for an order to sell, described the land as the south-west quarter of the north-*west* quarter of five, etc.; and that after the said petition of the guardian to sell was filed, and after notice was served on the wards, if not, indeed, after the order of sale, the description was fraudulently or without authority changed by erasing the word "west" and inserting the word "east."

Testimony was taken on this point, but while this establishes that the change was made after the petition was drafted, it does not clearly satisfy us that it was made after it was filed. The mistake in the description was, probably, discovered before the filing of the petition of the guardian to sell, and corrected prior to such filing by erasing the word "west" and inserting the word "east."

Deford v. Mercer.

But the same mistake was omitted to be corrected in the copy of the petition which was served upon the wards. The mistake occured by following the like mistaken description in the deed from Abel J. Cain to Hugh Pursley, of date August 16, 1849. The notice to the wards (which notice was indorsed upon a copy of the petition, which copy described the land as the S. W. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$, etc., instead of the S. W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$, etc.), contained a material mistake in the description of the land; it was a mistake because it described lands in which the wards had no interest, but it also describes them as those conveyed to the said Hugh by the said Cain. Admitting, as for the purposes of this case we do, that the effect of this misdescription of the land would be to enable the wards to avoid the sale, yet there are other facts which we now proceed to state, that equitably and effectually estop them from claiming title to the land. The answer alleges and the evidence establishes (indeed the fact is not disputed) that *all* of the wards of the said Jones *after they became of age*, with full knowledge of the fact of the sale, and that he had no money except such as arose from this sale, *received from and receipted* to him for the purchase money of the property sold by him as guardian.

Not only so, but they received this money from their guardian, *after this suit was brought*, a suit which directly attacked and put in issue the validity of the guardian's sale. Such alleged invalidity is, indeed, made the groundwork of the relief herein sought. Not only so, but the testimony shows that they knew the money arose from the sale, among other tracts, of this very land; that Jones had no other money in his hands except such as he had received from the sale made by him as guardian; and this money the said heirs (the present appellants on the record) not only still retain, but they have never tendered

it back to Jones or his vendees. It is not shown or claimed that any fraud was practiced upon them, to induce them to receive the money. On the contrary, it seems that they were anxious to get it just as soon as was practicable after attaining their majority.

It is not shown that they received it under any mistake of fact, nor that they received it under any misapprehension as to their legal rights.

Under these circumstances, if there is any thing well founded in conscience or in law, it is, that they are estopped in equity from claiming the land after having voluntarily accepted the money which arose from or was the product of the sale of the land.

We can only account for the action of the heirs in thus receiving the money, by supposing the testimony to be true, that in case there was a recovery they were to have only a portion thereof; that the rest was to go elsewhere, and that they were unwilling to give their undisputed right to the money arising from the sale for their disputed right to recover the land. But, however this may be, it is certain that the present appellants have, under the circumstances before stated, voluntarily received from Jones, their guardian, the purchase money, for the very land they are now seeking to recover.

That they are not entitled to and cannot have both the money and the land, is a proposition which seems too plain to require either an extended argument or authority to show. We have so held in a former case arising upon the same sale. *Pursley* v. *Hays*, 17 Iowa, 310. If the brief opinion filed in that case is closely examined it will be seen that the propositions on which it rests are guardedly stated. That opinion is certainly correct. There is nothing in the circumstances of the present case which requires us to decide more than that where a party with full knowledge of all the *facts*, there being no fraud or mis-

Deford v. Mercer.

take, and nothing to repel the presumption that he knew his legal rights, but much to show that he did fully know them, voluntarily accepts and retains the purchase money arising from the sale of his land, he cannot afterward claim the land itself. He is equitably estopped to deny the validity of the sale. When this question was before us previously in *Pursely* v. *Hays* (17 Iowa, 310), we did not deem it necessary to fortify our conclusion by a citation of adjudged cases in other courts.

As the question has been again brought up, we subjoin a reference to some decisions not only holding the same view, but even going much further than we are required to do by the facts of the cause now under consideration.*

---

* In 2 Smith Lead. Cas. (5 Am. ed.) 662, it is said: "That where those who are entitled to avoid a sale, adopt and ratify it, by receiving the whole or any part of the purchase money, equity will preclude them from setting it aside subsequently, for reasons which are too plain for statement."

In *Stroble* v. *Smith* (8 Watts, 280, A. D. 1839), the plaintiff claimed under sheriff's sale upon judgment against one Senger. Defendant disputed the validity of this sheriff's sale. "It appeared in evidence, that the defendant was a judgment creditor of Senger, and took the amount of his judgment out of the proceeds of the sale."

*Per curiam:* "Even were the plaintiff's deed from the sheriff inoperative, the defendant would be precluded from alleging it by the principle of *Adlum* v. *Yard* (1 Rawle, 171). He was in effect a party to the sale, and *he confirmed it irrevocably, so far as he was concerned, by taking his share of the proceeds of it out of court.*"

In *The Commonwealth* v. *Sherman's Admrs.* (18 Pa. Stat. [6 Harris] 343, A. D. 1852), it is asserted broadly by LEWIS, J., that if a party "has once received the proceeds of a sale of lands, equity would seem to require, that a title subsequently acquired by him, should inure to the benefit of his assignee. Equitable estoppels of this character apply to infants as well as adults, to insolvent trustees and guardians as well as persons acting for themselves, and have place as well where the proceeds received arise from a sale by authority of law, as where they spring from the act of the party." Citing *Crowell* v. *McConkey*, 5 Barr, 168; *Wilson* v. *Begger*, 7 Watts & Serg. 111; *McPherson* v. *Cunliff*, 11 Serg. & R. 426; *Benedict* v. *Montgomery*, 7 Watts & Serg. 23; *Stroble* v. *Smith*, 8 Watts, 280.

In *Smith* v. *Warden* (19 Pa. Stat. 426), the court reaffirmed this doctrine, in a case not unlike the one at bar, as the surplus of the moneys arising from the sale was paid over to, and receipted for by the plaintiff. The court used this language: "Where a sale is made of land, no one can be permitted to receive both the money and the land." After repeating the language used in the above extract from *Commonwealth* v. *Sherman's Admrs.*, the court add: "The application of the principle does not depend upon any supposed distinction between a void and voidable sale. The receipt of the money, with a knowledge, that the purchaser is paying it upon an

Deford v. Mercer.

It will be seen, that this principle of estoppel is not limited, as contended for by the appellant's counsel, to cases of voidable sales, but extends to cases where the sale is void.

3. —— void and voidable sales.

If it were true, that through mistake the land by a wrong description was embraced in the order of sale, but the right land was sold and conveyed, even then a receipt of the purchase-money under the circumstances shown in this case and above referred to, would estop the parties so receiving it from claiming the land. The heirs who received the money, have not testified, nor in any other way shown, that they received it under any mistake of fact, or in ignorance of their legal rights, or by reason of any fraud. This money they still retain and do not offer to restore it. As they have chosen to take the money, they cannot also have the land. The decree of the District Court dismissing their petition, is therefore affirmed.

II. Mrs. Deford, one of the plaintiffs, conveyed her interest as one of the heirs of Hugh Pursley to her uncle (West). The circumstances under which, and the consideration on which, this conveyance was made, are stated in 22 Iowa, 15–18. She

4. EQUITY: reformation of quitclaim deed.

---

understanding, that he is purchasing a good title, touches the conscience, and therefore binds the party in the one case as well as the other."

In the course of the opinion the court further remark respecting the plaintiff: "She was perfectly acquainted with the fact, that she had not been served with process to make her a party to the judgment on which the sale was made, and that she had not voluntarily made herself a party to that proceeding, without process ; and there is no evidence to repel the presumption, that she was equally well acquainted with the rules of law, which entitled her to disregard a sale made under such a judgment, as having no operation whatever upon her rights, unless she did some act which, on principles of equity and common honesty, might estop her from impeaching it." * * "The receipt of her share of the money was therefore an affirmation, that her title had passed to the purchasers by virtue of the sheriff's sale ; and she cannot be heard to make a contrary allegation now, to the injury of those who paid their money on the faith of the conveyance." These principles are cited with approval, by the Supreme Court of Indiana, in the case of *Thillate* v. *Stanley* (14 Ind. 409, 412).

conveyed by the same mistaken description by which Abel J. Cain conveyed (August 16, 1849) to her father, Hugh Pursley. That is, the land was described as the south-west quarter of the north-west quarter instead of the south-west quarter of the north-east quarter, etc.

That this was a mistake in the deed from Cain to Pursley, and a like mistake in the deed from Mrs. Deford (formerly Mrs. Cain) to West, is clearly established. Defendants claim under the title thus acquired by West, and by their cross-bill ask that this mistake be corrected. The court below decreed accordingly, of which Mrs. Deford complains.

The point made and pressed by her counsel is, that Mrs. Deford's deed to West was only a quitclaim, was purely voluntary, and hence the court could not properly decree a correction of the same.

That it was not a voluntary conveyance, see 22 Iowa, 16. She received a consideration for it, — a consideration equaling, at the time, the value of the interest conveyed. There was no fraud. She executed the deed and delivered it after she became, by the death of her husband, discovert. She intended to convey her interest in the land which her father owned at the time of his death, not in that to which he had no claim of title. A mistake crept into the deed by which she sought to execute this intention. Why should she profit by it? Why should she not correct it? We see no such reason in the mere fact that her conveyance was without covenants. The decree below, in this respect, was correct.

III. The point that the guardian's deeds are void for uncertainty of description, has, in effect, been already decided. 22 Iowa, 39.

Affirmed.