[No. 298.  Decided November 30, 1891.]

J. R. LEWIS, *Respondent*, v. HARVEY M. LICHTY, MARY A. SIMMONS, DANIEL W. SIMMONS, CHARLES A. MABRY, CLARA C. MABRY, HENRY W. MABRY AND ALBERT SAYLOR, *Appellants*.

QUIETING TITLE—PARTIES—WILLS—ELECTION BY HEIRS—ESTOPPEL.

In an action to quiet title, the complaint alleged that a certain decedent was, at the time of his death, the owner of a certain tract of land, and had a homestead claim upon a certain other tract of government land; that he left surviving him several minor children, his wife having died prior to his death; that by his will he directed that the title to the homestead be perfected, and that all his real estate be sold when it would realize $6,000, the proceeds of all his property to be equally divided among his children; that the executor named qualified and filed an inventory of the estate, listing and describing the homestead claim as well as the decedent's other real

estate; that a guardian of the minor children was duly appo'nted, who made the necessary proofs under the homestead laws, and received a certificate of entry from the United States for the homestead claim; that therefore the executor, under authority of the probate court, sold both the above-mentioned tracts for $6,050, which sale was duly confirmed by the court; that two of the heirs and legatees of decedent, being of age, conveyed by deed all their interest in said lands to plaintiff; that the guardian of said minors petitioned the probate court for leave to sell and convey whatever interest his wards might have in said lands, and the said court duly made an order authorizing such conveyance, whereupon said guardian executed and delivered to plaintiff a conveyance of all the interest of his wards in said lands; that said minors, with full knowledge of all the facts, on their arrival at the age of majority, each received their several portions of such purchase money, and have retained and used the same, and have never asserted any claim to said tract; that defendant S. induced certain of decedent's children, although disclaiming interest in said land, to execute quitclaim deeds for all their interest therein to one L.; and that after the delivery of said quitclaim deeds, S. procured the patent for said tract from the land office, and retains possession thereof. S. and L., together with all the children of decedent, are made defendants.

*Held,* That the action should be dismissed as to all the defendants except L., with their costs.

*Held,* That the minor children of decedent were not required to make any election to take under the provisions of his will instead of as his heirs, but could claim this homestead tract as their own, and also share in the estate under the will.

*Held,* That the minor children of decedent are estopped from saying that their title to the homestead tract (assuming that under Rev. St. U. S. § 2292 the same inured to them) did not pass to plaintiff by the executor's deed.

*Appeal from Superior Court, Yakima County.*

The facts are fully stated in the opinion.

*Frank H. Rudkin,* and *Galusha Parsons,* for appellants.

*Reavis & Milroy,* and *Whitson & Parker,* for respondent.

The opinion of the court was delivered by

STILES, J.—The demurrer of the defendant Lichty to the amended complaint, for want of sufficient facts, having

been overruled, and he declining to plead further, a decree was entered for the plaintiff. The other defendants seem to have appeared by demurrer to the original complaint, but the record shows no plea by them to the amended complaint; and we can only presume, therefore, that they did so plead, as the decree includes all the defendants, and all appeal therefrom.

The complaint shows the following facts: Before his death, August 7, 1874, Walter P. Mabry was the owner of a certain 157 acres of land, in Yakima county, which we will designate as "tract 1;" and, being a man of family, on the 14th day of November, 1871, filed and settled upon a certain other 160 acres of government land, in said county, which we shall call "tract 2," as a homestead. His wife died between the time of his settlement on tract 2 and the time of his own death. He complied with the homestead laws up to the time of his death; and he left surviving him six children, viz.: Emma F., who had passed her majority when her father died; James A., aged fifteen; Charles A., aged eleven; Mary A., aged nine; Henry W., aged seven; and Clara C, aged four years. Mary A. intermarried with the defendant, Daniel W. Simmons, before the action was commenced. Mabry left a will, which named George S. Taylor as executor, and directed that the title to the homestead be perfected; that all of decedent's real estate in Yakima county be sold at such time as the same would realize the sum of $6,000; that the proceeds of all his property, both real and personal, be equally divided among his said children, except that James should have $50 extra; that each of the minor children should be maintained and educated out of his or her individual portion of the estate; that the executor provide suitable homes for the minors; and that each of the children should, on arriving at the age of maturity, receive his or her due proportion of the estate. Taylor qualified as executor, after

due probate of the will, and on September 19, 1874, filed his inventory of the property of Mabry, in which he listed and described both of the above mentioned tracts of land.

On the 21st day of August, 1874, Thomas B. Nelson was duly appointed guardian of the minor children of Mabry, they continuing to reside in Yakima county, and he acted as their guardian until each child attained majority, receiving the cost and expense of their care and education from time to time, from the executor, out of the proceeds of the estate. On May 22, 1880, Nelson made the necessary proofs under the homestead laws, and received from the United States a certificate of entry for tract 2. The executor took possession of both said tracts of land, and had the rents and profits thereof until the sale hereinafter mentioned. At this point we quote from the amended complaint as follows:

" That on November 20, 1882, the said executor having been offered for all the said lands aforesaid of the decedent situated in Yakima county, Washington Territory, to wit (both said tracts), filed his petition in said court for the sale of said lands in accordance with the provisions of the will of the decedent, and on the 29th day of November, 1882, the said court duly made and entered an order authorizing and empowering the said execu or to sell at public sale, to the highest and best bidder, all of said real estate aforesaid belonging to the estate of decedent, provided that the same be sold for not less than $6,000. That in pursuance of such order the said executor did, after notice thereof duly given as provided by law, on December 26, 1882, sell said lands aforesaid at public auction to the highest bidder therefor, and Thomas Clancy having bid therefor the sum of $6,050, the same was struck off and sold to him for the said sum; $2,000 of which sum, as required by said order, was paid by said Clancy in cash. That on January 3, 1883, the said executor filed his return and report of said sale in said court, and the said sale and all proceedings thereunder were in all things by said court duly confirmed and a deed ordered made accordingly, and on March 10, 1883, the pur-

chase price all being paid, said executor duly executed and delivered to said purchaser a deed for the said lands, and every parcel thereof, which deed was filed in the auditor's office for record in Yakima county, and said purchase price, to wit, $6,050, was charged to said executor as funds in his hands belonging to said estate, to be distributed in accordance with the terms of said will.

"That after the sale of said lands to said Thomas Clancy, to wit, on February 15, 1883, said Clancy, for value, sold and conveyed the same to plaintiff and M. V. B. Stacy, and on March 17, 1883, for further assurance of such title to said vendees of Clancy, James Mabry and Emma F. Nelson, both being of the age of majority and both having filed their consent in writing to such sale by said executor, executed and delivered to plaintiff and said Stacy, a deed conveying to them said lands aforesaid, and all their interest therein.

"That on March 26, 1883, the said Thomas B. Nelson, guardian of the persons and property of said minors, for further assurance of title to said lands to plaintiff and M. V. B. Stacy, filed his petition in said probate court for leave to sell and convey whatever interest his said wards might have in said lands, and the said court then duly made an order authorizing and directing that said guardian make and execute such conveyance, which conveyance was made on May 8, 1883, whereby said guardian executed and delivered to said plaintiff and said Stacy, a conveyance of all the right, title and interest of his said wards, Mary A., Henry, Charles A. and Clara C. Mabry in and to all of said lands."

Stacy and plaintiff, immediately after their purchase from Clancy, went into possession of both tracts of land, and so remained until February 19, 1884, when Stacy conveyed his interest to plaintiff, who has ever since been in possession, claiming title under his deeds, making improvements, paying taxes, etc. The Mabry heirs never asserted any claim to either tract. In 1889 the plaintiff complied with some technical requirements of the land office, and thereupon a patent was issued for tract 2. The executor

received and accounted for the proceeds of the land sold to Clancy, and after May 1, 1884, had no other funds in his hands, and the complaint charges that the Mabrys "well knew of said sale of said lands by said executor, and that such purchase money was held by said executor, to be distributed under the provisions of said will, and with full knowledge of such facts and of all the matters herein set forth, the said several defendants, on their arrival at the age of majority, have each received and receipted for the several portions of such purchase money, for said lands, due them in accordance with the terms of and under the provisions of the said will, and have retained and used the same." The sums paid to each, with the dates of payment, were stated in full. The final allegations of the complaint are that about May 17, 1889, the defendant Saylor, for the purpose of injuring and defrauding plaintiff, and of casting a cloud upon his title to tract 2, represented to Clara C., Mary A., Charles A. and Henry W. Mabry that he could and would recover said tract 2 from plaintiff if they would execute quitclaim deeds to him for all their interest therein; that they disclaimed any and all interest therein; but that Saylor agreed that he would pay each of them $25 for such quitclaim deeds, and would, in addition, pay to them a share and portion of whatever he should recover of said land; that, being thereby induced by said Saylor, they executed and delivered quitclaim deeds for their interest in said land, which at his instance were made to the defendant Lichty, who is not a resident of this state, and that these deeds have been recorded in the auditor's office. Saylor, after the delivery of the quitclaim deeds, procured the patent for tract 2 from the land office, and now has possession of it. The plaintiff concludes that neither Lichty nor Saylor have any interest in tract 2, and that the quitclaim deeds are a cloud upon his title, and prays that the deeds be set aside and

taken for naught; that Saylor be required to surrender the patent; that the cloud be removed, and that he be decreed to be the owner of tract 2, in fee simple.

The court below found that the defendants Mabry, after attaining majority, elected to take under the provisions of the will of their father, instead of as his heirs, and ratified the sale made by the executor, with full knowledge of the facts; and it decreed all things in accordance with the prayer of the complaint, as well as that the defendants, and each of them, should be enjoined from the assertion of any estate or interests in both tracts. The costs were charged to the defendants, and each of them.

It seems to us that no cause of action was stated against any of the defendants, except Lichty. Simmons was merely the husband of one of the Mabry heirs, and could not, by any possibility have or claim any interest in this land. Saylor somehow got hold of the patent, which, presumably, contained the names of Mabry's minor children as grantees, but to obtain it from him a personal action at law was all that was necessary. So far as the quitclaim deeds were concerned he is a stranger to them, for Lichty is the grantee, and there were no allegations that Lichty was in any way a trustee for Saylor.. It is stated that Saylor and Lichty "now openly claim an interest in said lands aforesaid, under said quitclaim deeds;" but however Saylor might "claim," unless he claimed that Lichty held this title to some extent as trustee for him, he could not be a proper or necessary party in a case where, as here, the whole attack is made upon the obnoxious deed. As to the defendants Mabry and Mrs. Simmons (nee Mabry), it appears by positive allegation that they claimed nothing as against the plaintiff even when executing their deeds for $25 each, and surely after they had delivered their deeds they were divested of all further possible reason for asserting any interest, and it is not shown that they did or do

assert any.   It is plain that whatever matters there were for controversy over tract 2 were all transferred to Lichty by his deeds, and a decree against him would settle the title just as effectually as though all the country were made defendants.   Inasmuch as Lichty demurred separately to the amended complaint, it will be presumed that the others did likewise, or omitted to plead and were defaulted.   They are entitled to a reversal of the decree against them, and to a dismissal of the action, with their costs.   Neither should the decree in any event cover tract 1, as the title to it was nowhere put in issue.

The appellants maintain upon the principal issue that all of the proceedings of the probate court resulting in the deed of the executor and the guardian for tract 2 to Clancy were absolutely void, because Walter P. Mabry died before his right to patent had matured, and he leaving no wife, under section 2292 of the revised statutes of the Unitid States the "right and fee" to the patent and the land inured to his minor children instantly and without power of devise in him.   It will be observed that if the interpretation proposed by the appellants for the above mentioned statute is sustained, it would follow that the executor wrongfully included tract 2 in his inventory, since it did not belong to the decedent's estate, but to the Mabry children, to the exclusion of Emma, who was of age, and of all creditors; and that the only way in which the probate court could have acquired any jurisdiction over it was through its authority over the estate of the minors, which was not invoked.   In the view we take of this case, however, we do not find it necessary to decide this point.   Suffice it to say that the respondent meets it by two propositions —(1) That found by the court below, viz., that these minors, after the age of maturity, elected to take under the provisions of the will of their father, instead of as his heirs, and ratified the executor's sale with knowledge of the

facts; (2) that the minors having, after maturity, received their several portions of the proceeds of the executor's sale, with knowledge of the facts, are estopped to say that their title to the land did not pass to the plaintiff by the executor's deed.

We do not agree with the court below that this was a case of election. The language of the will is not set out in the complaint, and taking the allegations upon the demurrer most strongly against the pleader, the reasonable construction would be that the testator, mindful of the provisions of the law, that, upon his death, would vest the right to patent and the fee of the land in his children, he directed the title to the homestead to be perfected for them, and that *his* land, viz., tract 1, be sold when $6,000 could be realized from it. This is, of course, upon the assumption that appellants' view of the homestead law is correct. We have found no clearer statement of the law in regard to elections under a will than that in *Toney v. Spragins,* 80 Ala. 541, where it is said:

"In a judicial interpretation of the will, and ascertainment of the real intent, the court will act on the presumption that the testator intends only to charge what belongs to him. When the testator owns a partial or future interest in the property devised, the established rule is that the courts will strongly lean in favor of a construction which shows an intent to give only the interest, of which he has the power of disposition, and with which he is authorized to deal by virtue of his own rights; and will require clear and unambiguous expression, expressly or by clear and manifest implication, of an intent to devise the entire property. To compel an election it must satisfactorily appear that the testator attempted to dispose of what he did not own. . . . If the expressions of the will are ambiguous, or doubtful, and the court cannot determine that it was manifestly the intention to dispose of property not the testator's own, the *prima facie* presumption will prevail."

Admitting therefore, that Walter P. Mabry had no devisable interest in his homestead, we hold that the rule of construction above laid down would not have required his minor children to make any election, but that they could have successfully claimed this land as their own, and could also share in the estate under the will.

Upon the question of the estoppel, we must, for the purpose of the decision, again assume the law concerning the homestead to be with the appellants. We have, then, the probate court assuming a jurisdiction not warranted by law, and directing the sale of property belonging to the Mabry minor heirs; the executor making the sale, in a lump, of both tracts, for a sum larger than that mentioned in the will; the proceeds of the sale going into the general funds of the estate, where it was subject to the claims of creditors and the expenses of administration; and the guardian, for the sake of greater certainty to the purchaser, required to go through the form of a sale, the result of which was nothing to the estate of his wards, except as it was thereafter doled out to him by the executor. We also have the purchaser seeking out two of the heirs, who were then of age, Emma and James, and procuring from them quitclaim deeds, showing some fear on his part that his title was not altogether safe. And over against these matters, all of which make for the appellants, we have only the fact that the other four minors, two of whom came of age in 1884, and two in 1888, as they passed majority, had settlements with the executor, received from him a proportional share of the estate, as though tract 2 had been governed by the will, and made no objection to the proceedings resulting in the deeds to Clancy, nor any claim that tract 2 was not the land of the plaintiff. In short, reduced to its lowest terms, we have A assuming to sell and convey, as his own, the land of B to C, for a consideration not alleged to be sufficient, and B, after years of

possession and improvement by C, with full knowlege of the facts, accepting from A the money he received from C, and retaining it. All the rules of honorable dealing between man and man require that he who takes the benefit of a thing in this wise shall not have the thing again, and so the courts have uniformly held. In *Smith v. Warden,* 19 Pa. St. 424, a woman whose interest in certain land was sold by a sheriff, she not being bound by the judgment on which the sale was made, received her share of the purchase money from the sheriff, and the court said that her acceptance of the money was an affirmation that her title had passed by virtue of the sheriff's sale, which she could not afterwards controvert. What were otherwise void guardians' and administrators' sales have been frequently held to pass the title where the parties interested, being of full age and in possession of the facts, accepted and used the proceeds. In *Davidson v. Young,* 38 Ill. 145, the court held that but for the fact that the proceeds had not been actually received by the defendant, she would have been estopped. In *Walker v. Mulvean,* 76 Ill. 18, the estoppel was sustained where the proceeds had been received by minors after coming of age. So in *Penn v. Heisey,* 19 Ill. 295; 68 Am. Dec. 597; *Pursley v. Hays,* 17 Iowa, 310, and *Deford v. Me.·cer,* 24 Iowa, 118; 92 Am. Dec. 460.

Appellants insist that in this case the Mabrys took the money from the executor as they found it, and had a right to receive it as the proceeds of tract 1 alone, which he had a right to sell under the will for $6,000; that the purchaser being bound to know the law, he bought with constructive knowledge of all imperfections in the titles assumed to be conveyed to him, and must be taken to have offered and paid the $6,050 for tract 1, without considering tract 2, which he knew the executor could not sell; and that the doctrine of estoppel cannot apply where the party who asserts it had knowledge of all the facts. But to sustain

the estoppel it is not necessary to consider the acts or the knowledge of the respondent's grantor, Clancy. We may assume everything as against him, and yet it does not appear that he did not suppose he was buying both tracts. He had before him the inventory, the appraisement, the petition of the executor for the sale, the order of sale, the published notice of sale, and the offer at public auction, each and all including and particularly describing tract 2 as a part of the land to be sold; his bid covered both tracts, and the report of sale, the confirmation and the deed of the executor embraced both. How can we say that he paid nothing on account of tract 2, and that the Mabrys received nothing for that tract from the executor? We certainly cannot do so from the face of this amended complaint, the allegations of which are admitted to be true. Whether for consolation or blame, the appellants must look to the acts of the Mabrys in keeping silent through many years and in finally accepting the money of Clancy. Had they in their time repudiated the sale the result might have been different; but as it is, they have confirmed it, and the land belongs to the respondent. Appellant Lichty stands in no better position than his grantors, his quitclaim showing him to be a purchaser with full notice. *May v. LeClaire*, 11 Wall. 217.

As to him the decree will be affirmed with costs, excepting that all reference to tract 1 will be stricken out; as to the other appellants it will be reversed with costs, and the complaint dismissed.

ANDERS, C. J., and SCOTT, and DUNBAR, JJ., concur.

HOYT, J., concurs in the result.