[No. 10507. Department One. December 26, 1912.]

LAURA BRIGGS TRETHEWEY et al., Appellants, v. CAROLINE E. HORTON et al., Respondents.[1]

TRUSTS—TESTAMENTARY TRUSTS—MANAGEMENT OF ESTATE—ABUSE OF DISCRETION—LIABILITY OF TRUSTEES—EVIDENCE—SUFFICIENCY. Testamentary trustees are shown to have exercised proper judgment in the execution of their trust, and should not be discharged or held to account for increased interest to certain objecting legatees, where it appears that they were expressly directed not to sacrifice the estate, and to hold and sell a particular business block as one property, that the deceased left but $64,000 cash on hand, while repairs and improvements on the business block were under way which would cost $85,000, besides which there was a charge to pay

[1]Reported in 128 Pac. 632.

legacies amounting to over $367,000, $220,000 of which with annuities aggregating $3,840 a year, besides taxes etc., that to meet this severe problem they incorporated the estate, the residuary legatees accepting stock in lieu of legacies, which earned less than four per cent, that to insure participation by the class of legatees objecting, they executed the several notes of the company for the sums due them, which drew interest at four per cent per annum, payable monthly; and such per cent is found to be a fair return, when men of financial judgment testified to that effect, considering the circumstances; especially where, for a time at least, payment of such interest was a mere gratuity; and such objecting legatees had no right to have their share of the estate invested in the stock of the company.

SAME—DISCRETION—SALE—OBLIGATION OF TRUSTEES. In such case, the testamentary trustees did not abuse their discretion in failing to convert into money real estate, the free use, possession, and enjoyment of which was devised to the wife for life, although she had moved away from the property; since the right to make such use of the proceeds during life is doubtful, and this precludes any abuse of discretion.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered January 2, 1912, in favor of the defendants, in an action for an accounting by testamentary trustees, and for other equitable relief. Affirmed.

*Howard Waterman*, for appellants.

*Frank P. Lewis* and *Louis Henry Legg*, for respondents.

CHADWICK, J.—Dexter Horton, a pioneer of the city of Seattle, died testate on July 28, 1904. His estate, which was and is of considerable value, consists principally of a building known as the New York Block, and the annex thereto, called at the time of his death the Seattle Block. His home for many years had been on a lot at the corner of Third and Seneca streets. At the time of his death, Mr. Horton left money to the amount of about $64,000. This and more was consumed by the executors or trustees of his will in completing certain improvements to the real estate, and in moving the Seattle Block back from Third street a distance of nine feet. Both of these buildings, now made into one, were converted into modern office buildings. Mr.

Horton left a widow and two daughters surviving him. There were also three children, the issue of a daughter Rebecca Horton Briggs, theretofore deceased, namely: Laura Briggs Trethewey, Ida Briggs, and Alfred Briggs. The will is very long, and contains so much in the way of detail and specific charges and instructions that we shall not undertake to set it out, but will refer to the items pertinent to our present inquiry in their proper order. The widow was left a bequest in money of $20,000, and a monthly income of $250 per month. One daughter was left $20 per month for pocket change, and $50 per month until her death or marriage, and $100,000. The other daughter was left a bequest of $100,000. The executors and trustees were further directed to care for the issue of his deceased daughter, Rebecca Horton Briggs, in this way: To "set apart the sum of one hundred thousand dollars, and divide the same into three equal parts to be known and designated as 'A', 'B' and 'C', and safely invest the same in safe and sound interest-bearing securities, and use and apply the principal and interest to accrue thereon to the following uses and purposes, that is to say:

"The interest accruing and to accrue on said part 'C' to be paid unto my dear granddaughter Laura Briggs Trethewey the wife of Samuel Trethewey of Seattle (and the sister of Ida and Alfred). If in the judgment of my executors and trustees such interest shall be insufficient for the support of her family, then they are authorized and empowered to use so much of the principal as they shall deem proper and expedient. And if she shall survive me and die leaving child or children surviving her, then and in that event I order and direct my executors and trustees to pay all of the unexpended principal and interest, if any, to her child or children then surviving her, to have and to hold forever; but if my said granddaughter shall die leaving her husband but no child or children her surviving, then and in that event, I order and direct my said executors and trustees to pay to her husband Samuel Trethewey out of said principal the sum of two thousand and five hundred dollars to hold for-

ever; and the balance less any advancements now or here-after made shall fall into and become a part of my residuary estate."

Other bequests are made in the will aggregating $367,000. The deceased classified his bequests, those going to his widow and two living daughters and the issue of the deceased daughter being of the second and third classes; those to relatives in the collateral line being of the fourth class, and those going to various churches, charitable, benevolent and social organizations being of the fifth class. The will then provides for the order of payment:

"That the legacies and bequests made and specified in the second and third clauses of this will shall stand on terms of equality as one class; and the bequests in the fourth and fifth clauses of this will shall stand on terms of equality as one class; and that each class shall be paid in the order named, at such time or times as my executors and trustees shall in their discretion be able to do without sacrificing my estate and the rights of my beneficiaries."

Aside from these bequests of money, the testator directed that his widow should have the "free use, possession and enjoyment during her natural life, of my family residence, free of cost, charge or expense of rent, repairs, insurance, taxes and assessments (whether such residence be owned or rented)." It remains only to refer to the express directions to, and powers of, the trustees:

"I give, devise and bequeath unto my executors hereinafter named and unto the survivor or survivors of them, as trustees, all of my money, property and estate of what name or nature soever and wheresoever situate, with full and ample power, authority and discretion, as I would have if living, to hold, control and manage, to bargain, sell, convey, mortgage, lease or otherwise manage, control, dispose of, settle and distribute the same or any part thereof or interest, with or without notice, in one or more parcels, at such times and for such prices as in their best judgment shall be deemed for the best interest of my estate, beneficiaries and legatees; and in aid of and to limit and control such power, I order and

direct my executors and trustees to hold the New York Building and the Seattle Building and the lands under and appurtenant thereto as one parcel, and to sell or distribute the same together as one parcel, at such time as in their best judgment they can do so without sacrificing my estate and the interests of my beneficiaries, and I expressly relieve any and all purchasers of any duty or liability as to the proper application of the proceeds or moneys paid to my executors and trustees, all in trust however, to and for the following uses and purposes, that is to say:."

They are directed to pay the legacies, but no time is fixed for their payment. The trustees were, as has been already seen, confronted with a problem severe and important to all concerned in the estate. With about $64,000 cash on hand, repairs and improvements under way which could not be abandoned and which eventually cost $85,000, a charge to pay legacies amounting to over $367,000, $220,000 of which with annuities aggregating $3,840 per year, and taxes, etc., to be paid before these appellants and those named after them had any right to participate at all, and an express direction not to sacrifice the estate and the rights of the beneficiaries, which must be held to include all the beneficiaries and not these appellants alone—the trustees were put to their best judgment. In this predicament they resolved to incorporate the estate. This they did on April 15, 1905. The corporation, though prudently managed so far as we can see, has not returned enough to pay off the several legacies. The residuary legatees have accepted stock in lieu of their legacies. The stock has earned a net return of less than four per cent. In order to insure a right of participation in the estate to the appellants and those in their class, the trustees, at the time of the incorporation, caused to be executed the three several notes of the company, for the amounts then due upon the items "A", "B" and "C". These notes provided for the payment of four per cent interest per annum, payable monthly. Appellants accepted payment of the interest from month to month, until they

began this suit alleging an abuse of trust "in that the trustees have not obeyed the instructions of the will, and that instead of investing the funds in safe and sound securities, they loaned the money of the estate to the Dexter Horton Estate, a corporation, upon an unsecured promissory note, drawing interest at four per cent," and further, that it is the information and belief of the appellants that the trustees have profited personally in the management of the trust fund, both directly in the way of dividends and profits returned, and indirectly in the increase of the value of the property and assets of the corporation. Appellants pray for an accounting; for a judgment "for such sum as the court shall find to be due and owing from said trustees to the plaintiff, Laura Briggs Trethewey; that the trustees be removed; and for their costs and other relief."

To warrant this prayer, which is broader than the complaint and asks more than the will warrants, appellants endeavored to prove: That the trustees were paying only four per cent, whereas money invested in "safe and sound interest-bearing securities" would have returned six per cent to seven per cent; that the trustees led plaintiffs and their attorneys into the false belief that the fund set apart for their benefit had been invested in the stock of the company, or that stock had been issued to cover the amount, and that they would, and were, receiving as much as other stockholders. One or two other matters run in and out of the testimony, but we agree with the opinion the trial judge expressed on the trial, that the only question is whether the trustees have exercised proper judgment under the will. Have they deprived appellants of a right or put them in a worse situation than they would have been otherwise? Conceding that there was an imperative duty to convert the estate into money and to carry out the ultimate intent of the will, it must be admitted that the trustees, in the interest of all concerned, would have a reasonable time to do so, and having done so, it would be then their duty to invest appellants' share and pay them the

interest thereon. Surely, under the facts detailed, from August, 1904, to April, 1905, was not an unreasonable time. Therefore, the only question remaining is whether four per cent annual interest, payable monthly, was a fair return. Men of financial judgment and reputation have testified that, considering the facts of this case, the return is not to be condemned. There is testimony tending to show that the rate of interest paid on the note was equal to, if not greater than, the net return on the stock of the corporation. Appellants were satisfied so long as they believed that what they called their share in the estate was invested in the stock of the company. It would seem that in equity they cannot now complain because it was not so invested. They must have known that the trustees had no authority to so invest it, or if they had, that appellants would have no present interest in the principal, but only in its earnings.

We have followed the argument of counsel for appellants as he has presented it; that is, that there was a fund that might have been used or invested under the item "C" of the will, as hereinbefore quoted. As will be seen, there was no fund. The trustees have, notwithstanding, paid interest from within six months after the death of the testator; whereas they might have taken a year or two, under the testimony, to dispose of the estate without being subject to the charge of taking an unreasonable time. Therefore, the payment of so-called interest was, for a time at least, a mere gratuity; and when considered for the whole time, deducting a reasonable time for the investment of the money, if it had been on hand, we think that four per cent, payable monthly, is as much as appellants would have realized if the trustees had taken time to convert the property into money and invest it at a higher rate. It was stated in the oral argument that, since the trial of this action, the trustees have, upon the suggestion of the trial judge, borrowed enough money upon the credit of the estate to make the fund provided under items "A", "B" and "C" of the will, and that it has been

invested so as to draw a current rate of interest. While probably not bound in law or in equity to do this, the fact that it has been done indicates to our minds a disposition on the part of the trustees to deal fairly and justly with appellants, and in our judgment the record bears out the findings of the trial judge, that they have been true to the trust reposed in them and have done nothing to deprive appellants of any legal right.

Counsel contends that the trustees should have sold the residence property on Third and Seneca streets, the widow having moved away from it, and that it is business property of the probable value of $250,000. We think that a failure to convert this property into money could not be charged as a delinquency on the part of the trustees. There is a very substantial question of law that might confront the trustees if they undertook to use the proceeds of such sale to pay legacies in the lifetime of the widow, and the law, as we understand it to be in such cases, is that a trustee will not be charged with abusing his discretion if his right to act is reasonably doubtful.

The decree of the lower court is affirmed.

MOUNT, C. J., GOSE, PARKER, and CROW, JJ., concur.