[No. 25174. Department Two. January 22, 1935.]

HAZEL REBECCA ROHNE, *Appellant,* v. CHARLES E. HORTON *et al., Respondents.*[1]

[1] Reported in 40 P. (2d) 134.

*Charles H. Graves* and *Weter, Roberts & Shefelman,* for appellant.

*Evans & McLaren,* for respondents Horton *et al.*

*Shorts & Denney* and *Clinton H. Hartson,* for respondent National Bank of Commerce.

*Poe, Falknor, Falknor & Emory,* for respondent First National Bank of Seattle.

HOLCOMB, J.—This is the third chapter before this court over the estate of Dexter Horton, deceased. See *Trethewey v. Horton,* 71 Wash. 402, 128 Pac. 632, and *In re Rohne,* 157 Wash. 62, 288 Pac. 269.

■ A noticed motion to strike the statement of facts and dismiss the appeal was passed to the merits for disposition.

The record shows: Appellant prepared a proposed statement of facts and filed it in the office of the King county clerk of the superior court on April 11, 1934, or within the time required by the then rule for filing proposed statements. On the same day, she made due service thereof by delivering a copy of the statement

to Evans & McLaren, attorneys for the principal defendants, being all the defendants except the First National Bank of Seattle, a corporation, as trustee, and the National Bank of Commerce, a corporation. Evans & McLaren, attorneys for the principal defendants, acknowledged "due and timely service" of the copy of the statement of facts upon the original statement on that date. On May 12, 1934, all other parties appearing, that is, the two banks, were served with a written notice, which was also then filed, notifying them of the filing and serving of the statement of facts.

On June 20, 1934, all of the defendants were served with a written notice fixing the date of June 29, 1934, and the place for settlement and certification of the statement by the trial judge. On that date, it was properly certified.

It will be observed that the statement of facts was served and filed on the principal respondent well within the time required by statute and rule, and notice thereof served on the other respondents who were adverse parties to appellant prior to the ten days allowed for proposing amendments to the statement of facts. On the expiration of the time for the settlement of the statement of facts, there having been no amendments proposed, it was settled and certified by the trial judge. This is not a case, therefore, of the failure to file and serve the statement of facts within the jurisdictional limit, and does not fall within the rule of the cases cited by respondents, namely: *First National Bank of Aberdeen v. Andrews,* 11 Wash. 409, 39 Pac. 672; *American Fuel Co. v. Benton,* 98 Wash. 26, 167 Pac. 346; *Universal Motor Co. v. McGeorge,* 104 Wash. 344, 176 Pac. 331; *In re Rotter's Estate,* 148 Wash. 285, 268 Pac. 866.

The record here brings this case within the rule

announced in: *Hansen v. Nilson,* 17 Wash. 606, 50 Pac. 511; *In re Patterson,* 98 Wash. 334, 167 Pac. 924; *Metropolitan Club v. Massachusetts Bonding & Insurance Co.,* 127 Wash. 320, 220 Pac. 818. Hence, the motion to strike the statement of facts and dismiss the appeal is not well based, and is now denied.

We agree with counsel that the controlling facts are not in dispute, and that the chief question here is that of a proper application of the law. Some history of the estate and of the provisions of the will may be found in *Trethewey v. Horton, supra,* and of the disposition of the estate to the great-grandchildren of the testator, of whom appellant is one, in *In re Rohne, supra.*

The will provides:

"Upon the decease of my said wife, and after the payment in full of each and every of the bequests and legacies in this will stated, if there shall remain any part of my estate, I give, devise and bequeath all the rest, residue and remainder thereof unto my children Nettie Horton Jones and Caroline Horton, share and share alike; Provided, however, If at the time of such final distribution of such residue, there shall be then living a great grandchild or grandchildren, the descendants of my deceased daughter, Rebecca, as specified in the fourth subdivision of the third clause of this will, then said residue shall be divided and distributed to my said daughters, so that each shall receive one-third thereof and the said grandchild or grandchildren the remaining third thereof."

Appellant was born on June 27, 1909, attained the age of twenty-one years on June 27, 1930, but one year before that she had married, which, of course, under our statute, would make her of full age. Very shortly afterward, she brought the action for accounting against her father and guardian which is reported in 157 Wash. 62, 288 Pac. 269. At that time, all counsel assumed that the incorporation of the Dexter Horton

estate as a corporation was valid, and the court was misled into making the statement that

"Dexter Horton had bequeathed to his great-grand-children, one of whom was appellant, 692.77 shares of the capital stock of the Dexter Horton Estate, Inc., a corporation, together with approximately $65,000 in cash and securities."

The value of the corporate stock at the time of the appointment of the guardian was approximately $347,000.

Another portion of the will which is quoted in *Trethewey v. Horton, supra,* will be repeated here, as it is all important:

"I give, devise and bequeath unto my executors hereinafter named and unto the survivor or survivors of them, as trustees, all of my money, property and estate of what name or nature soever and whereso-ever situate, with full and ample power, authority and discretion, as I would have if living, to hold, control, and manage, to bargain, sell, convey, mortgage, lease or otherwise manage, control, dispose of, settle and distribute the same or any part thereof or interest, with or without notice, in one or more parcels, at such times and for such prices as in their best judgment shall be deemed for the best interest of my estate, beneficiaries and legatees; and in aid of and to limit and control such power, I order and direct my executors and trustees to hold the New York Building and the Seattle Building and the lands under and appurtenant thereto as one parcel, and to sell or distribute the same together as one parcel, at such time as in their best judgment they can do so without sacrificing my estate and the interests of my beneficiaries, and I expressly relieve any and all purchasers of any duty or liability as to the proper application of the proceeds or moneys paid to my executors and trustees, all in trust however, to and for the following uses and purposes, that is to say:"

This is followed by directions to pay the legacies, fixing no time therefor.

On the same day as the date of the will, Dexter Horton wrote a letter in his own hand which, after making suggestions respecting a cheap and inexpensive funeral and burial for himself, then said:

"I suggest to my heirs and chief beneficiaries that it may be advisable to incorporate and take and hold the New York and Seattle Buildings and any other part of my estate, in the name of such corporation."

The above letter cannot, of course, be considered as a testamentary direction, but merely, as stated, a suggestion to be followed or not as his trustees deemed advisable. It was not binding upon them in any sense.

The provision of the will above quoted, however, was a binding direction, and in it the executors and trustees were ordered and directed to hold the New York Building and Seattle Building and the lands appurtenant thereto as one parcel, and to sell or distribute the same together as one parcel, at such time as, in their best judgment, they could do so without sacrifice.

As shown in *Trethewey v. Horton, supra,* conditions had arisen before April 15, 1905, which caused the executors and trustees to consider that a corporation should be organized to take title to the above properties, to which the chief beneficiaries and the residuaries then in existence assented.

Upon the organization of the estate into a corporation, it made, executed and delivered to respondent, now First National Bank of Seattle, a corporation, formerly the Dexter Horton National Bank of Seattle, its deed of trust to secure the payment of $2,100,000 of first mortgage, six per cent, sinking fund bonds. This deed of trust was duly recorded. This respondent, which became trustee under that deed of trust, first sought a legal opinion upon the title to the property, which was given by the late John H. Powell, who ap-

proved the organization of the estate as a corporation, approved the validity of the corporation in the state of Washington, and approved the issuance of the $2,100,000 par value, six per cent, first mortgage bonds. It is well known that the late Mr. Powell was one of the most industrious and able lawyers that ever practiced in this state. Later, the Marine National Bank, which became the respondent National Bank of Commerce of Seattle, became a trustee under a second deed of trust securing $400,000 in bonds of the corporation. These bonds were also approved in the opinion of Mr. Powell. It is manifest that all of these bonds have been floated, and, are probably in general circulation throughout the country.

Upon the conclusion of the trial, the trial judge *pro tem.*, a very widely experienced and able lawyer, gave, in part, the following memorandum opinion:

"Now, if, after she [appellant] became of age, with full knowledge of the facts and being fully advised of her legal rights,—and by that I do not mean her rights strictly at law, but her rights under the law, (including those equitable in nature),—she does acts that amount to election or adoption or ratification, I do not think that even Mr. Graves would claim that she could later refute it. That doctrine,—the double aspect of the doctrine, (1) the full knowledge of the facts, and (2), being apprised of her legal rights,—is in question. To the proposition that both must be present, Mr. Graves has cited authorities which amply support his contention; authorities to the contrary have been cited. I am inclined to believe that the weight of authority is with the defendant on that proposition. But, further than that, I do not believe that the second aspect of the case would be applied in any court, in a case where the minor, having arrived at full age and having full knowledge of the facts, was being advised by competent attorneys. Now, she was doing that in this case. We all know the good reputation and standing at the bar of Mr. Peyser; and all

of us who have been sitting through this case will testify to the competency and ability of Mr. Graves. And I say I don't apprehend that any court would refuse to adopt the principle of ratification, adoption or election where the client had the full knowledge of the facts and was advising from time to time with competent attorneys.

"Now, let's go back a minute and talk about the knowledge of the facts: The plaintiff testified that she went to the court house, made some examination of the guardianship proceedings, and read the will of Dexter Horton at that time. The will showed that this property in question, as well as the home property, was a part of his estate. The will gave directions as to what was to be done with each of them. Then, later, she learned, if she didn't know before,—but I don't say that she knew before,—that the property was being held by this Dexter Horton Corporation; and her guardian had for years received substantial dividends upon the stock of the corporation. Therefore, I can not shut my eyes to the fact that she must have known that after the death of Mr. Horton the corporation had been formed and the property been conveyed to it; that her guardian had received stock in the corporation, in lieu of her share in it, and had received dividends on that share for many years. I cannot escape from the conclusion that she had knowledge of the facts. Now, in saying that I am not intending to impute to this young woman false testimony. She testified that in 1933 she supposed that Dexter Horton had incorporated the estate himself, and that that is the way that the stock came to the guardian. I think that when she was testifying she had forgotten what she had known before; I give her credit for good faith in that respect. Now, having that knowledge and being advised,—there is no evidence that she was advised on that particular point, but she had knowledge of the facts, as well as being under the guidance, in a general way, of competent attorneys,—what did that show and what did she afterwards do? She accepted the stock from her guardian, having petitioned the court to so direct. After it was accepted, she exercised, not once, but several times, acts of ownership

over it. That means, in my judgment, ratification or adoption of the transfer of the property by the executors to the corporation and the issuance of the stock by the corporation to the executors, in trust, for these after-born children.

"There is another way to look at it, and that is to say that when she became of age she made this application to the court for this stock, having the same knowledge of the facts and being so advised as to the law; she then had two options. She could then take this stock, which would amount to an election to confirm the transaction; or she could refuse to take it. She could not take both courses; under the doctrine of election, she must take one or the other. But, having taken one, she has lost the other. So that the same conclusion is arrived at, whichever one of these two theories is adopted. If I am right in that conclusion, the plaintiff can not prevail in this action."

As to the statutes of limitations applicable, the trial judge said:

"Now we come to the next line of defense, the statute of limitations. The ten-year statute does not apply in this case because the statute itself says it does not apply. It says that the period of minority shall not be considered in the ten-year period. The young woman came of age in 1929.

"The next statute is the five and three year statute, covering actions brought to set aside conveyances by executors, administrators or guardians, 'under the laws of this state.' Now, I am not entirely confident of my position on this, but my position is this: That this sale was not such a sale. This conveyance by the executors to the corporation is not such a conveyance as is contemplated by that statute.

"Now we come to section 788. Defendants rely upon it on the theory that the corporation has been in possession under color of title etc. for more than seven years, having continuously paid before delinquency the taxes assessed thereon, this action having been brought more than three years after the plaintiff arrived at the age of majority. It is my opinion that the tax payment feature of this section of the statute is of no avail to

the defendants. The plaintiff's claim is that she is and since 1914 has been the owner of an undivided one-sixth of the property. Assuming that contention to be correct, the corporation owned the other undivided five-sixths. They were tenants in common. The tax payments were all made out of the income of the property, including the income from her undivided one-sixth. It necessarily follows that the tax payments were made (to the extent of her one-sixth) out of her own money. In this connection it is not to be forgotten that this statute of limitations is interposed as a defense against her claim to ownership of an undivided one-sixth of the property.

"But I think 786 must apply, under the decisions of our supreme court. I made a study of them Saturday and yesterday. They start in 25 Wash. 566, in which the action was brought just as this action was, a sort of combination of an action to recover the property and to quiet title. 785 is the section which authorizes such form of action.

"Other cases are 50 Wash. 331, and 113 Wash. 203. I am not overlooking the *MacDowell* case, 72 Wash. 224. I do not think that case is entirely in accord with the other two cases. I have studied it, but notwithstanding it I feel that the decisions of the supreme court of this state force the conclusion that 786 does apply to this action. I agree with Mr. Graves that 786 is a harsh statute in its application to persons under disability. However, as applied to this case, it appears that even if the section had provided (like the other sections of the same act) a three year grace period for those under disability, 786 would still be applicable, for the reason that here the three year period would have elapsed before the commencement of action."

The trial judge expressed some doubt as to the validity of the corporation. We have no such doubt. Although it was not an issue directly in *Trethewey v. Horton, supra,* it was virtually so decided. It was so decided when the court there approved the action of the trustees in incorporating the estate on April 15,

1905. Had it been otherwise, that action should have been disapproved and the trustees directed to proceed with the execution of the trust, as such. Among other things, we there said:

"The only question is whether the trustees have exercised proper judgment under the will. Have they deprived appellants of a right or put them in a worse situation than they would have been otherwise? Conceding that there was an imperative duty to convert the estate into money and to carry out the ultimate intent of the will, it must be admitted that the trustees, in the interest of all concerned, would have a reasonable time to do so, and having done so, it would be then their duty to invest appellants' share and pay them the interest thereon. . . . Appellants were satisfied so long as they believed that what they called their share in the estate was invested in the stock of the company. It would seem that in equity they cannot now complain because it was not so invested."

Appellant cites myriad authorities and discusses many side issues which have no force under this will. It is needless to cite and review them at length, for to do so would make this opinion fill a large part of one of our reports. Appellant disregards the plain fact that this was a nonintervention will which gives to executors and trustees, with certain exceptions, ample powers and discretion, and which the testator here made stronger by prescribing that *they should have the same power as he himself would have.* He himself would doubtless have had the power, and no one would gainsay it, to have the New York and Seattle properties transferred to a corporation of his organization. There can be no question but that the corporation was organized in good faith, as was held in *Trethewey v. Horton, supra.* It was also managed prudently. The present belated attack upon the management of the trustees of the corporation on this appeal has no merit.

There being no doubt in our minds that the corpora-

tion, organized to take over that part of the Horton estate which was transferred to it, the New York and Seattle properties, was valid, that practically ends this case.

■ Furthermore, as the trial judge said, we consider appellant bound by her election when, after she became of age, or married, she accepted the stock of the corporation, when she was bound by full knowledge of the facts and advised of her legal rights, as she must have been. She had learned and able counsel then, as now. 28 C. J. 1158; 12 R. C. L. 1142; *Lewis v. Lichty,* 3 Wash. 213, 28 Pac. 356, 28 Am. St. 25; *In re Rohne, supra.*

■ We consider also that the trial judge was correct in his conclusions as to the effect of the several statutes of limitations, and that Rem. Rev. Stat., § 786 [P. C. § 7536], applies here under the provision of that statute and our decisions, cited by him.

Appellant concludes her argument by calling attention to the equities of this case, asserting that "no case in the history of mankind ever presented stronger elements for appeal to the court of equity than the case at bar." On the contrary, there are no equities in her favor. They are all against her. Much might be said on that phase, but suffice it to repeat there are no equities in her favor.

The judgment of dismissal is affirmed.

STEINERT and BLAKE, JJ., concur.

BEALS, J., concurs in the result.