WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, EDWARD H. WORTH AND WILLIAM A. WORTH, Trustees under a certain Trust Agreement,

*vs.*

EDWARD H. WORTH, GEORGE S. WORTH, NORA S. WORTH, ALICE W. GEDDES, ELIZABETH W. SPACKMAN, WILLIAM A. WORTH, MARGARET WORTH CROWTHER, ANNE WORTH, WILLIAM P. WORTH, 2ND., RICHARD M. WORTH, EDWARD H. WORTH, JR., JOHN S. WORTH, 2ND., C. BROOKE WORTH, ROBERT ELGAR WORTH, ELIZABETH W. GEDDES, F. BRAMWELL GEDDES, JR., WILLIAM WORTH GEDDES, ANN TOWNSEND GEDDES, HORACE B. SPACKMAN, 2ND., JOHN W. SPACKMAN, G. DONALD SPACKMAN, JR., CHARLES T. SPACKMAN, CAROLINE H. SPACKMAN, WILLIAM A. WORTH, JR., KATHERINE JANE WORTH AND ROBERT RICHARDS WORTH.

*New Castle, June* 19, 1933.

*Robert H. Richards* and *Caleb S. Layton,* of the firm of Richards, Layton & Finger, for complainant.

*Aaron Finger,* for adult defendants.

*William H. Foulk,* for guardian *ad litem* of defendants who are minors.

THE CHANCELLOR: The first question for consideration is whether the trustees are vested with discretionary power with respect to the investing and re-investing of the trust funds. Specifically, the trustees desire to be instructed upon whether they are confined in the matter of investments to so-called "legals," or may they in their discretion step outside of the "legals" and invest in such securities as in the exercise of their discretion they deem to be desirable for the investment of the trust principal.

Upon the assumption that the answer to this question may be thought by the court to depend upon the law of which jurisdiction, that of Pennsylvania or that of Delaware, governs the administration of the trust, the solicitors for the parties have submitted arguments upon that phase of the matter. The facts recited in the statement of the case show how the question might be thought to arise of whether the law of Pennsylvania or of Delaware governs the present administration of the trust. But inasmuch as the law of Pennsylvania and of Delaware appear to me to be the same with respect to the liberty of trustees to step outside the prescribed "legals" where the trust is such as the one now before the court, the question of conflict of laws presented by the argument need not be considered by me. I shall now proceed to examine the question of whether the trustees under the agreement are confined in their investments to "legals" as defined first under the Pennsylvania law, and second under the Delaware law.

The pleadings set out the pertinent constitutional and statutory provisions of Pennsylvania (which are admitted) governing the subject of the investment of trust funds.

There is a constitutional provision of Pennsylvania (*Section 22, Article 3, Constitution of Pennsylvania*) which prohibits the general Assembly of that State from enacting any statute that authorizes the investment of trust funds by executors, administrators, guardians or other trustees, in the bonds or stock of any private corporation. Then there are several Pennsylvania statutes authorizing or permitting trustees, etc., to invest funds over which they exercise control in certain designated securities, the so-called Pennsylvania "legals," none of which of course are of the type forbidden by the Pennsylvania constitutional provision above quoted. I do not find it necessary to quote those statutes. The respective dates of their enactment are April 5, 1917, *P. L.* 46 (*see* 20 *PS* § 802), June 7, 1917, *P. L.* 447 (*see* 20 *PS* § 801), June 29, 1923, *P. L.* 955 (*see* 20 *PS* § 801), and July 11, 1923, *P. L.* 1059 (20 *PS* § 802). These statutes do not purport to require trustees to invest in the classes of securities mentioned therein. Their language is, that the trustees "are hereby authorized to" or "may" invest in the legals named.

The trust now under examination expressly authorizes the trustees "to invest and keep the said property invested from time to time in, what in the discretion of the trustees are, good investments." By this language the settlors of the trust expressly vested the trustees with discretionary power over investments unrestricted by limiting language. The Supreme Court of Pennsylvania has held that where a trustee is vested with discretion in the matter of investments, the constitutional and statutory provisions found in the law of that State regarding legal investments for trust funds, above referred to, have no application. It was so held in *Barker's Estate,* 159 *Pa.* 518, 28 *A.* 365, 368, where the language from which the existence of the discretion in the matter of investments was deduced was much less clearly expressed than here. In the later case of *In re Detre's Estate,* 273 *Pa.* 341, 117 *A.* 54, 56, the same court expressed itself as follows: "Where, as here, a trustee is

clothed with discretionary powers as to investments and reinvestments, neither the state constitutional provision as to trust funds nor the rule as to legal investments applies."

The case of *In re Taylor,* 277 *Pa.* 518, 121 *A.* 310, 37 *A. L. R.* 553, in no sense conflicts with the two Pennsylvania cases just cited which preceded it. That case re-affirms the rule which the two earlier cases established. Its principal point in the present connection is that before it can be said that a trustee is exempt from the restrictions of the statutes prescribing legal investments the discretionary power upon which the claimed exemption rests, must be clearly manifest.

In the instant case the intent of the settlors to confer a discretion upon the trustees in the matter of investments and re-investments is not only manifested by the language of the trust agreement already quoted, viz., "to invest and keep the said property invested from time to time in, what in the discretion of the trustees are, good investments," but it is further evidenced by a later provision in the trust agreement reading as follows: "and with full power and liberty from time to time to change investments of the said property and estate as they shall see proper, or to hold the present investments of the said property and estate without any liability whatsoever on the part of the said Trustees to be held accountable in any manner whatsoever for any loss or depreciation of the same, unless caused by the wilful default or negligence of the said Trustees, and they and each of them are hereby expressly relieved of any and all responsibility for any error of judgment or of fact that any beneficiary hereunder may consider them to have made in any respect with reference to the conduct of this trust."

Not only is an intent to confer upon the trustees discretion respecting investments thus plainly conferred by the terms of the trust instrument itself, but evidence of such an intent is to be found in the acts of the settlors; for it is to be observed that the securities which they placed in

the trust were to a large extent, if not entirely, non-legals under the law of Pennsylvania where the trust was created, where the settlors, the immediate beneficiaries, and three of the four trustees resided, and where the trust corpus was located. Furthermore, the settlors were themselves two of the trustees, and while they were assisting in the administration of the trust, they joined with their co-trustees in making re-investments in securities which, according to the law of Pennsylvania, were not authorized as legal investments. Now while it may be argued that these acts of the settlors in making re-investments in non-legals may not alone be sufficient to manifest an intent on their part to confer a discretion upon the trustees to step outside the classes of investments allowed as legal by the Pennsylvania law (as to which I express no opinion), certainly they constitute evidence lying in parol which very persuasively shows that the language the settlors had used in conferring discretionary power was every whit meant to be as broad as its phraseology naturally indicates. *Duncklee v. Butler, et al.,* '30 *Misc.* 58, 62 *N. Y. S.* 921.

It follows from the foregoing that if the question of whether the trustees, in the administration of this particular trust, are subject to the rule as to legal investments which prevails in Pennsylvania, the answer must be in the negative.

How stands the matter under the Delaware law? Prior to April 3, 1931, the statutory law of Delaware relating to the question, in so far as it appears to be pertinent in the present connection, was found in *Section* 3875, *Revised Code* 1915. That section provided: "Excepting where instruments creating trusts prescribe otherwise, trustees named in wills or appointed by the Chancellor, may hereafter invest the funds of their trusts in securities of the following classes and kinds, viz:" (Then followed a classification of the authorized securities.)

This section was the law of this State when the trust

funds were removed to Delaware and all the trustees were residents of this State. It had no application to such a trust as is here under consideration for the reason that the trustees thereunder were neither named in a will nor appointed by the Chancellor.

Section 3875 was amended on April 3, 1931, by the striking out all thereof and inserting a new section. 37 Del. Laws, c. 259. The section as it now stands is as follows:

"Trust Securities Designated:—Trustees, Guardians and other fiduciaries may invest the funds of their trusts as follows:

"(A)—In accordance with the provisions pertaining to investments contained in instruments under which they are acting;

"(B)—In the absence of any such provisions, then in securities of the following classes: [Here follows the designation of eleven classes.]

"(C)—The foregoing specification of the classes of securities in which Trustees, Guardians and other fiduciaries may invest the funds of their trusts shall not be construed to relieve such Trustees, Guardians and other fiduciaries from the duty of exercising due care in selecting securities within such classes.

"(D)—Nothing contained in this section shall be interpreted as prohibiting Trustees, Guardians or other fiduciaries from taking over (other than by purchase) from any source whatsoever property of any kind, including securities not within any of the classes specified in sub-division (B) hereof; but Trustees, Guardians or other fiduciaries may take over such property and may without liability for any loss or depreciation therein continue to hold the same until in the exercise of due care it shall become no longer wise so to do; provided, however, that in case a Trustee, Guardian or other fiduciary is acting under authority of an instrument, the terms and provisions of such instrument shall be controlling as to the power and duty of such Trustee, Guardian or other fiduciary.

"(E)—Securities and/or other property acquired or invested in by Trustees, Guardians or other fiduciaries prior to May 1, 1931, in conformity with the law of the State of Delaware in effect at the time of such acquisition or investment, which are not authorized in sub-division (A) or (B) of this Section, may be retained by such

Trustees, Guardians or other fiduciaries without liability for any loss or depreciation therein until in the exercise of due care it shall become no longer wise so to do.

"(F)—The proceeds of the sale or other disposition of any securities and/or other property held in accordance with sub-division (D) or (E) of this section shall be invested in accordance with the provisions of sub-division (A) or (B) of this section, as the case may be."

It is to be observed that the language of the statute is phrased in terms of permission. Its language is not mandatory. The phrase is trustees, etc., "may invest the funds of their trusts as follows." In this respect the present section makes no departure from the original for which it is a substitute. Where the language is that of permission or authorization, with no mandatory intendments as here, the effect of it is that if trustees keep within the categories of investment named in the statute, they are afforded a protection against sur-charge due to loss which, had they stepped outside the authorized classes of investment, they might well be made to bear. Of course, our present statute in subsection (C) thereof has the effect of causing the protection of the statute to fall short of being absolute.

Statutes of this type are designed to lay down a chart for the guidance of trustees. Frequently and perhaps usually they are so phrased that if trustees steer by them, the courts hold that if an investment be among the permitted classes the trustee is relieved from all liability even though the investment goes on the rocks. But it is not the policy of such statutes that the charts thus laid down by them shall be so supremely authoritative that the creator of a trust shall be excluded from the right to select, according to his own wish or even whim, the sort of financial chart he prefers his trustee to be guided by.

Our statute in its amended form expressly recognizes this fact by providing in subsection (A) that trustees may

invest the funds of their trusts in accordance with the provisions pertaining to investments contained in the instruments under which they are acting.

Now it is contended, and rightly so I think, that the instrument under which the trustees of this trust are acting contains provisions which show that the settlors desired that the trustees might, if they deemed it wise, make investments, regardless of statutory definitions of what is desirable in the way of securities, and if they did so that they should be held to accountability, not on the basis of what any statute might indicate as a rule of investment conduct, but solely on the basis of what is usually and generally accepted as the just and equitable rule for the testing of a trustee's acts in such matters.

I have already referred to the discretion which the settlors of this trust conferred on the trustees. Repetition under that point is not necessary. I am of the opinion that when the broad discretion was conferred by this agreement upon the trustees, it was the rule of that discretion which the settlors adopted for the guidance of the trustees. Thus, in this case there are provisions pertaining to investments contained in the instrument under which they (the trustees) are acting, and where that is the case the investments made by the trustees by virtue of that authorization are as expressly permitted by the statute as are any others. Subsection (A) is clear to that effect. Not only so, but subsection (B) which contains one classification of the statute's "legals" is in terms made operative only in case there are no such provisions contained in the trust instrument as make subsection (A) operative. Indeed it is correct to say, that when subsection (A) is applicable as here, the investments made in accordance with the trust instrument's provisions may just as properly be described as "legals," as may investments made in any of the eleven types of securities enumerated in subsection (B) when that subsection is applicable.

It follows then that the trustees may with safety invest in, "what in the discretion of the trustees are, good investments * * * and with full power and liberty from time to time to change investments of the said property as they shall see proper, or to hold the present investments of the said property and estate without any liability whatsoever on the part of the said Trustees to be held accountable in any manner whatsoever for any loss or depreciation of the same, unless caused by the wilful default or negligence of the said Trustees, and they and each of them are hereby expressly relieved of any and all responsibility for any error of judgment or of fact that any beneficiary hereunder may consider them to have made in any respect with reference to the conduct of this trust."

Of course the manner in general in which the trustees may exercise their discretion and the latitude which they may properly take, are questions which I am not called upon by these proceedings to discuss. All that the case calls upon me to answer is whether there is any statutory classification of securities to which they must confine their investments on pain of suffering the consequences, whatever they are, of departing therefrom. My conclusion is that there is no such statutory classification, under either the Pennsylvania or Delaware law.

Finally, discretion being conferred upon the trustees in the matter of investments and re-investments, does the Wilmington Trust Company as a successor co-trustee possess the same discretionary power as is given by the trust agreement to the original trustees? I am of the opinion that it does. *Jacobs v. Wilmington Trust Co.,* 9 *Del. Ch.* 400, 80 *A.* 346, 349, decided by the Supreme Court of this State determines the question. The question is one of intent—the intent of the creators of the trust. In the *Jacobs Case,* the Supreme Court quoted with approval the following from *In re Smith,* [1904] 1 *Ch.* 139, 73 *L. J. Ch.* 74: "Every power given to trustees which enables them to deal with or affect the trust property is *prima facie* given

them *ex officio* as an incident of their office, and passes with the office to the holders or holder thereof for the time being; whether a power is so given *ex officio* or not depends in each case on the construction of the document giving it, but the mere fact that the power is one requiring the exercise of a very wide· personal discretion is not enough to exclude the *prima facie* presumption, and little regard is now paid to such minute differences as those between 'my trustees,' 'my trustees A. and B.' and 'A. and B., my trustees'; the testator's reliance on the individuals to the exclusion of the holders of the office for the time being must be expressed in clear and apt language."

In the instant case the trustees are given power in unmistakable terms to deal with or affect the trust property. They hold title to it; they invest it and re-invest it. It is not the case of a naked power unaccompanied by title as was *Lockwood v. Stradley,* 1 *Del. Ch.* 298, 12 *Am. Dec.* 97. It seems perfectly clear that the powers they were to exercise were powers belonging to them *ex officio*. The agreement transfers and vests the title to the trust property in the trustees and to their "successors" and assigns forever. Nowhere in the agreement can language be found which gives countenance to the idea that the trust was strictly personal to the named trustees. In fact, I think quite the contrary affirmatively appears, for the agreement expressly authorizes the trustees "to replace a vacancy caused by death, retirement or otherwise, of any of their number, or to select a first class Trust Company to act as trustee or co-trustee, in which latter event the Trustees selecting the Trust Company shall reserve the right to change the Trust Company at any time or times and substitute therefor one or more individuals, a corporation or other Trust Company to act as co-trustee or sole Trustee." The agreement further provides that in the event of a trust company acting as sole trustee, all the net annual income should be paid to life beneficiaries; whereas, if there is no such sole trust company trustee, discretion may

be exercised by the co-trustees as to both the amount and times of payment of net annual income to the life beneficiaries. In this last provision, therefore, we see that in one matter of discretionary action, viz., the payment of income, the settlors specifically provided that the general liberty of action allowed to the co-trustees should not be allowed to a sole trustee if the same was a trust company. In no other respect does the instrument assume to differentiate a trust company trustee from any individual trustee. It is a legitimate assumption to say, that if the settlors specificially curtailed the generally discretionary power belonging to all the trustees by saying that in the one matter of income payments a sole trust company trustee should not exercise discretion, the settlors intended that if a trust company acted as trustee or co-trustee, it should be free to exercise the full body of all the other discretionary powers conferred by the instrument.

The agreement is a fairly lengthy one and I do not deem it necessary to go through it in detail for the purpose of pointing out other considerations which its provisions suggest as supporting the idea that, so far as investments and re-investments are concerned, the Wilmington Trust Company as co-trustee possesses all the discretionary powers which were conferred by the settlors upon the trustees in the first instance.

Decree in accordance with the foregoing.