DELAWARE TRUST COMPANY, a corporation of the State of Delaware, Trustee under three Trust Indentures wherein William duPont was the Settlor,

*vs.*

WILLIAM DUPONT, JR., JEAN L. A. DUPONT, his wife, MARION DUPONT SOMERVILLE, ELAINE IRVING WOODRIFF, LOUIS DUPONT IRVING, EVELYN DUPONT IRVING, A. DUER IRVING and JEAN ELLEN DUPONT, EVELYN R. A. DUPONT and W. HENRY DUPONT, MINORS.

*New Castle, July 31, 1937.*

*David F. Anderson,* for complainant.

*James H. Hughes, Jr.,* and *Paul Leahy,* of the firm of Ward & Gray, for William duPont, Jr., Jean L. A. duPont, his wife, Marion duPont Somerville, Elaine Irving Woodriff, Louis duPont Irving, Evelyn duPont Irving, and A. Duer Irving.

*Howard Duane,* for Albert L. Massey, guardian *ad litem* of Jean Ellen duPont, Evelyn R. A. duPont, and W. Henry duPont, minors.

THE CHANCELLOR: The question presented by the bill arises upon three trust instruments which William duPont, Sr., created in his lifetime.

The subject of each trust was shares of the common stock of E. I. duPont deNemours & Company, a corporation of this State—three thousand seven hundred and fifty shares in each of two of the trusts and two thousand shares

in the third. The complainant is trustee in each trust. The first trust, hereinbelow indicated as trust A, was for the benefit of the trustor's son, William duPont, Jr., for life, remainder over; the second, hereinbelow designated as trust B, was for the benefit of the trustor's daughter, Marion duPont Somerville, for life, remainder over; and the third, hereinbelow designated as trust C, was for the benefit of Jean Licester duPont, wife of William duPont, Jr., for life, remainder over.

Paragraphs in the trust instruments which are pertinent here are as follows:

### TRUST A.

"1. All dividends payable upon said shares of stock in money shall be deemed to be income and all other distributions and emoluments on such stock shall be treated as principal.

"2. The Trustee in making investments hereunder shall not be limited to securities deemed to be legal investments for trust funds and shall not be liable for any error of judgment or any loss which shall not result from its fraudulent conduct.

"3. The Trustee shall not be liable for taking or continuing to hold the said shares of stock of E. I. duPont de Nemours & Company until the termination of the trust hereby created respecting them, and during the life of the said William duPont, Jr., shall not sell the same or any part thereof without his written consent; provided, however, that the said shares or any part thereof may be sold by the Trustee after the death of the said William duPont, Jr., for reinvestment or at the termination of the trust for the purpose of distributing the trust estate, and provided further that when said shares are so sold the Trustee may transfer the same to the purchaser free of any trust and without liability on the part of the purchaser respecting the application of the purchase money, which purchase money during the continuance of the trust shall be held subject to the same trusts as are applicable to the property sold.

"4. In addition to and not in limitation of its general powers as Trustee, the said Trustee shall have power to exchange for new stock or bonds in any plan of reorganization, consolidation, combination, purchase or merger, the said shares of stock of the said E. I. duPont de Nemours & Company, or any other shares of stock or any

bonds held or to be held as part of the trust property; to join in any arrangement or combination of bondholders or stockholders respecting the affairs of any corporation in which the trust estate may hold stocks or bonds; to purchase investments at a premium and to charge the premium either against the income or principal or partly against income and partly against principal as the said Trustee may think most equitable; provided, however, that none of the powers referred to in this paragraph shall be exercised by the Trustee in the lifetime of the said William duPont, Jr., without his consent in writing."

### TRUST B.

"1. All stock dividends and special cash dividends and distributions on said shares of stock of said E. I. duPont de Nemours & Company received by said Trustee at any time, and all other emoluments accruing thereon, except regular cash dividends, shall be deemed to be part of the principal of the trust and such special cash dividends shall be invested by the Trustee in productive investment securities and the net income thereof disbursed in the same manner and to the same persons as the regular dividends are to be paid as hereinabove provided."

2. Same in *haec litera* as 2 under Trust A.
3. Same in *haec litera* as 3 under Trust A.
4. Same in *haec litera* as 4 under Trust A.

### TRUST C.

1. Same in *haec litera* as 1 under Trust B.
2. Same in *haec litera* as 2 under Trust B.
3. Same in *haec litera* as 3 under Trust B.
4. Same in *haec litera* as 4 under Trust B.

On December 27, 1935, the duPont Company declared a dividend payable in stock of General Motors Corporation, a large quantity of which it held among its assets. The trustee now holds 1,281 3/55 shares of General Motors Corporation so declared to it by the duPont Company and which are allocable to the three several trusts.

The life beneficiaries have requested the trustee to sell the General Motors stock and to invest the proceeds in other securities permitted and allowed under the trust indentures, and William duPont, Jr., has expressed his willingness to express in any written form the trustee may re-

quire his consent to the proposed sale, such consent being required, as is assumed, under the provisions of each of the three indentures. The reason why it is desired that the General Motors stock be sold and the proceeds re-invested is stated in the answers of the adult defendants. It is, that all three of the trust estates consist largely of duPont Company stock (though some apparently has been sold), that the duPont Company owns ten million shares of General Motors stock, and that it would be imprudent for the trusts to continue to hold the General Motors stock, since, through the concentration of their assets in the duPont Company stock, the trusts have, indirectly through that concentration alone, as large an interest in General Motors stock as prudent management would suggest as wise. In homely language, the contention of the beneficiaries is that the trusts, directly and indirectly, are carrying too many of the General Motors eggs in their baskets. There should, they contend, be more of a diversification in the investments of the trusts' principal.

This contention has considerable of merit to support it.

The trustee, however, doubts its power to make a sale as requested and has asked for this court's instructions.

The dividend which was paid in General Motors stock is not of course a cash dividend. It is what might be called a property dividend, or a dividend in kind. It is, in the phraseology of the donor in trust A, a "distribution or emolument on" the duPont stock other than cash; and it is "other than a regular cash dividend," using the trustor's language in trusts B and C. In each trust, therefore, according to the express terms thereof, the General Motors stock is deemed to be a part of the principal.

But is there power to sell it? The trustee is mindful of the rule which many times has been stated, viz., that in the absence of a provision giving a trustee power to sell

or convert securities under a trust, the power does not exist unless the trustee secures permission from a court of competent authority. See the note and cases cited thereunder found on page 1118 of 57 *A. L. R.* In our own State the Legislature as long ago as 1891 conferred power on the Chancellor to order a sale and conversion of trust property when the same appeared to him to be beneficial to the estate, except where the instrument creating the trust expressly prohibits such sale and conversion. 19 *Del. Laws, Ch.* 246, appearing as *Section* 4403, *Revised Code* 1935. To an extent at least and under proper circumstances, courts of equity had, without express statutory authority, assumed in the beneficial interest of a trust to order such sale and conversion, even though the instrument creating the trust nowhere conferred the power.

The reason which underlies the rule that as a general proposition a power does not exist in a trustee to change the form in which trust investments are received from the creator of the trust unless plainly conferred either by express words or necessary implication, is, I take it, this—that if the creator of the trust has himself selected the particular investment, and directed that that property be held and its proceeds disbursed, it is not for the trustee to say that the trustor's judgment was bad and that his wishes ought to be disregarded. And courts when they were asked to order the trustee to disregard the supposed wishes and judgment of the trustor and to sell the property which he had selected, approached an answer to the request in a spirit at times of great reluctance to favor it. As observed by Professor Bogert in *Section* 741, *p.* 2182, of his work on *Trusts and Trustees,*

"While the older and more conservative attitude of the courts was that of hostility to powers of sale, especially with relation to realty, and the older decisions declared that a presumption exists against the existence of a power of sale, it is believed that recently the courts have been much less reluctant to find an implied power

of sale in a trust instrument. The mediaeval worship of real property has waned. Land has become very much an article of commerce. The modern trust demands frequent shifts in its holdings.

"While in some instances the courts decline to decree that an implied power to sell is present, the greater number of the adjudications are on the side of the trustee seeking a holding that he has authority to sell."

In line with this is also the comment on *page* 502 of *Volume* 1 of the *Restatement of the Law of Trusts,* that in the United States a power of sale is more readily construed than in England under the common law, and it is there said that "the reason is that there is not in the United States the same tendency to retain property from generation to generation as was the English usage."

This court has held that "authority to make a sale does not have to be expressed in precise words. The authority is sufficiently manifest if from the language employed it is plainly deducible or inferred, or if the scheme of the trust necessitates a sale for its proper accomplishment." *In re McCaulley's Will,* 14 *Del. Ch.* 383, 127 *A.* 81, 82; *Hilles v. Hilles,* 11 *Del. Ch.* 159, 98 *A.* 296; *Leeds v. Sparks,* 8 *Del. Ch.* 280, 68 *A.* 239; *Flinn v. Frank,* 8 *Del. Ch.* 186, 68 *A.* 196.

Now in this case the trustor never made any selection of General Motors stock as a receptacle in which the trust principal should be invested. He did not place it in the trusts. So far as he was concerned, its presence in the corpus of each trust is purely accidental and adventitious. There is no room to infer that he desired his trustee to keep and hold it, from the circumstance of himself having selected it as an investment. The investment which he approved by his own selection was the investment in stock of the duPont Company. Even as to that, he was willing for it to be sold and converted with the consent of his son while living, and in the discretion of the trustee after the son's death.

If it is so with respect to the sale and conversion of the stock which he himself had selected, it is against all reason to say that, even with the son's consent, stock which was, from the angle of his foresight, an interloper and stranger among the assets, must be kept there. He expressed a willingness that the form in which the entire corpus existed when he created the trusts might be metamorphosed into something else. Yet, if the trustee's doubts are well founded, investments which he had no hand in selecting and which have been thrust upon the trusts, must remain cast in the mould of their present form, however much, from considerations of business prudence, it may be advisable to convert them into something else.

The principle which should govern this case was fully considered and approved by Chief Judge Cardozo in *Mertz v. Guaranty Trust Co.*, 247 *N. Y.* 137, 159 *N. E.* 888, 57 *A. L. R.* 1114. In that case stock had been placed in a trust to pay the dividends to a life beneficiary with remainder over, without power of sale. The company that issued the stock merged with another company and the shares received by the trustee for the old shares as a result of the merger were quite different from the old in their rights and incidents. Because of this loss of identity which the old shares had suffered, it was held that, notwithstanding the trust conferred no power of sale, the trustee nevertheless could sell the new shares. Towards the close of his opinion Judge Cardozo used language which emphasizes the significance which arises from the circumstance that the new shares were not chosen by the creator of the trust, from which circumstance it is unreasonable to conclude that there is anything in their nature or in the history of their acquisition which would fix them in static rigidity among the assets of the trust.

If cash had accrued to the principal, as it might in trusts B and C, the trustee was empowered to invest it.

There is nothing to indicate, as in reason we would not expect to find anything to indicate that when a cash increment to the principal was once invested, the trustee could not sell the investment and re-invest the proceeds in other securities permitted by the instruments. The trustee could do so, for power to invest is not exhausted by being once exercised. *Gray, et al., v. Lynch,* 8 *Gill* (*Md.*) 403, 425.

It is reasonable to consider the dividends which were in General Motors stock as though cash dividends had been declared and the trustee had invested it in General Motors stock. It was in a sense a forced purchase by the trustee of General Motors stock. Viewing it in that light, there is power to sell it and to re-invest the proceeds.

It is argued that since the grantor expressly conferred a power of sale with respect to duPont Company stock only, and then only with the consent of his son while living, it must be concluded that he desired to deny a power of sale with respect to any other investment. This is too narrow a view to take. The broad power of the trustee, with the consent of the son during his lifetime and thereafter in its own discretion, to sell all of the particular stock which the trustor himself had selected, tends to negative it, as before pointed out, as does also the power to invest increments to the principal in the discretion of the trustee without regard to the class of legals defined by our statute. If the trustee should in the exercise of its discretion desire to convert the General Motors common stock into securities of a type approved by the law as legal for trust funds, the narrow view just stated would forbid it. An interpretation that leads to that result is highly unreasonable.

The foregoing indicates the answer which is to be given to the question upon which the trustee asks to be instructed.

Decree accordingly.