**W. Henry duPONT, Plaintiff,**

v.

**DELAWARE TRUST COMPANY, a Delaware corporation, and Hopeton Holding Corporation, a Delaware corporation, Defendants,**

**and**

**Marion duPont Scott et al., Intervening Defendants.**

Court of Chancery of Delaware.

Sept. 5, 1973.

William E. Taylor, Jr., Wilmington, and Marvin Comisky and Morris L. Weisberg of Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for plaintiff.

William S. Potter and Charles S. Crompton, Jr., of Potter, Anderson & Corroon, Wilmington, for defendants Dela. Trust Co., and Hopeton Holding Corp., and for intervening defendants Marion duPont Scott, Jean Ellen duPont McConnell, Evelyn duPont Donaldson, John E. duPont and William duPont, III.

V. R. Shackelford, Jr., Orange, Va., for intervening defendant Marion duPont Scott.

MARVEL, Vice Chancellor:

On January 3, 1928, the late William duPont executed his last will and testament in which, after devising extensive real estate and bequeathing personal property located on such estates principally to his son and daughter and to a limited degree to their then spouses, he devised and bequeathed the residue and remainder of his estate to the defendant Delaware Trust Company in trust. His will went on to direct such trustee (after the payment of annuities to six designated persons) to pay sixty percent of the net income derived from such trust to his son William, Jr., and forty percent of such net income to his daughter Marion during the terms of their natural lives, said son and daughter being the testator's sole issue.

Such will further provided that upon the death of William, Jr., that sixty percent of the principal of the aforesaid residuary trust, which on the death of such life tenant held, inter alia, 5,835 shares of Delaware Trust Company stock, be distributed (subject to payment of the aforesaid six annuities) ". . . to and among all my grandchildren who may then be living and the issue then living of any deceased grandchild of mine . . ., such issue, however, to take by representation only the share or shares which his, her or their parent or parents would have taken if then living."

On December 31, 1965, William duPont, Jr., died, and the portion of the trust prin-

cipal of his father's estate in which he had held a life interest was thereafter divided and distributed in equal parts to his five children, all of whom survived their father.

William duPont, Jr.'s, sister Marion is now 79 years of age. She survives without issue and continues to receive the net income earned on forty percent of the residue and remainder of her father's estate, including that derived from forty percent of 5,825 shares of the aforesaid Delaware Trust Company stock held in her father's estate at the time of his death, such dividends reaching her after their receipt by the defendant Hopeton Holding Corporation.

Plaintiff, who, as noted above, is one of the five children of William duPont, Jr., the eldest three of whom were minors and the two youngest unborn, at the time of their grandfather's death, claims that as a beneficiary of a one-fifth interest in the residue and remainder of his grandfather's estate that on his father's death he should have received a fifth of the shares of Delaware Trust Company stock allocable to the sixty percent interest in such shares set aside for the life of William, Jr., rather than the 699 shares of stock of the defendant Hopeton Holding Corporation which he received in February, 1970, Delaware Trust Company shares having been exchanged share for share for Hopeton shares shortly after plaintiff's grandfather's death. Thus, as a result of the 1928 Hopeton transaction complained of, which plaintiff in effect seeks to have rescinded, he holds Hopeton stock instead of the equivalent in shares of Delaware Trust Company, although he can point to nothing in his grandfather's will designed to prevent such trustee from disposing of all of its own stock or of any other asset held in trust during his father's lifetime in exchange for other property. Plaintiff further complains that because voting control of the Delaware Trust Company shares held in trust under his grandfather's will resides in the hands of the holders of the Hopeton preferred stock, he is at the mercy of such preferred voting stock for the receipt of the Delaware Trust Company dividends which since 1928 have been paid out, after modest deductions [1] by Hopeton for expenses and taxes, to those holding a beneficial interest in Hopeton shares, at first to the two life income beneficiaries and later to the issue of William duPont, Jr. He prays that an order be entered directing the delivery to him of his proportionate share of Delaware Trust Company stock allegedly bequeathed to him under the residuary clause of his grandfather's will in exchange for the 699 Hopeton shares which he now holds and that Delaware Trust Company be removed as trustee " . . . for a deliberate and willful violation of its duties and that a substitute trustee be appointed. * * *" And while the complaint does not in haec verba seek rescission of the 1954 indenture, under the terms of which preferred voting shares of Hopeton were placed in trust for ultimate distribution to those descendants of William duPont, Jr., selected by a majority of the named trustees, plaintiff's recovery in this action of his claimed proportion of voting stock of Delaware Trust Company would necessarily have a direct effect on the terms of such 1954 trust insofar as plaintiff's claimed right to own and vote his claimed Delaware Trust Company stock is concerned.

William duPont died on January 20, 1928, and, as noted above, his personal estate, then estimated to have a value of approximately $40,000,000, contained [2] 5,835

---

1. Defendants estimate the diminution in bank dividends which would otherwise have been paid to plaintiff directly had there been no Hopeton exchange to be about $4,500.

2. On February 11, 1929, the executor sold ten of these shares leaving 5,825 shares in trust. By reason of stock splits these same 5,825 shares now total 116,500, the total authorized and issued stock of Delaware Trust Company having over the years been increased to 200,000 shares from the 10,000 shares authorized and issued as of the time of death of William duPont.

shares of stock of Delaware Trust Company, constituting 58.35 percent of such corporation's issued and outstanding stock, which until his death placed him in control of the affairs of such bank. On January 23, 1928, Mr. duPont's will was probated and Delaware Trust Company qualified as executor upon giving bond with surety in the amount of $7,000,000, such will containing no provision authorizing the executor to serve without bond or without surety.

On January 25, 1928, William, Jr., concerned with the size of the bond required of the executor by the Register of Wills for a personal estate having an estimated value of approximately $40,000,000, had his sister[3] join him in petitioning such official to order that the executor's bond be increased to $40,000,000, an amount far in excess of the some $10,000,000 current total assets of the Delaware Trust Company. A rule issued to such effect returnable on March 8, 1928.

In the meantime, however, a more fundamental problem had been raised by the lawyers representing the interests of William duPont, Jr., and his sister and thereafter by certain bank directors and their counsel as to the possibility that Delaware Trust Company might be disqualified to vote its own shares[4] held by it as trustee under the will of William duPont, a result which would have left control of the bank in the hands of minority stockholders, or at least in the hands of incumbent management for an indefinite future. Whereupon, William duPont, Jr., through his attorneys, Ward and Gray, having requested that the directors of Delaware Trust Company meet to consider such problem, a notice calling a directors' meeting for January 30, 1938 was sent out on January 24, which notice stated that an " . . . important matter will be presented at this meeting."

At such meeting Andrew C. Gray of the law firm of Ward and Gray, acting as counsel for William duPont, Jr., presented a resolution which recited that because " . . . in the opinion of counsel for this Company there is a serious question as to the right of this Company to vote said shares of stock while said shares of stock are held by this Company as Executor or Trustee . . . " that William duPont, Jr., and his sister Marion had proposed " . . . to this Company that it convey said shares of stock to a corporation to be formed and controlled by them, for the purpose of holding title to the said shares of stock and vote the same in accordance with law . . . "

As an added incentive towards gaining director approval of such scheme, William duPont, Jr., and his sister Marion agreed to execute a bond running in favor of Delaware Trust Company designed to indemnify the latter and its officers and directors for any loss which might be suffered by them as a result of a claim that the bank stock had been " . . . so sold to the said Hopeton Corporation without due authority of law and without sufficient consideration . . . ", and such a bond in the amount of $900,000 was thereafter filed after approval of the Hopeton transaction by the bank directors, which approval was unanimously voted " . . . After a full discussion. * * *" Those directors present and voting in favor of the Hopeton transaction at such meeting included David J. Reinhardt, then counsel for the bank, and Daniel J. Layton, also an attorney, who stated, according to the minutes of the meeting, " . . . that in their opinion, the Delaware Trust Company could not consistently vote its own

---

3. It is established on the record that William duPont, Jr.'s sister Marion relied at all times on her brother's advice on business affairs.

4. Revised Code Delaware 1915 section 1933 pertaining to the voting of shares of corporate stock stated in part:
   " . . . . provided further that shares of its own capital stock belonging to the corporation shall not be voted upon directly or indirectly."

stock, especially where such vote constituted the control."

The plan approved of first called for the formation of the defendant Hopeton Holding Corporation (which was incorporated on February 2, 1928) with a capital structure of ten shares of preferred stock with sole rights to vote the bank shares for the election of directors of Delaware Trust Company and with a nominal fixed dividend rate of one dollar a share, and "about" 5,-825 shares of common [5] stock without such voting power. The plan also provided for the issuance of six of the preferred shares to William, Jr., four of such shares to Marion, and for the exchange of 5,825 of such corporation's common shares for the same number of shares of Delaware Trust Company. Following the carrying out of such exchange, which was accomplished on February 6, 1928, practical voting control of Delaware Trust Company became vested in William duPont, Jr., which control was made absolute when shortly thereafter he received from his sister Marion the four shares of Hopeton voting preferred originally issued to her. The transaction was thereupon ratified by the board of directors of Delaware Trust Company on February 16, 1928, its counsel and counsel for William duPont, Jr., and his sister Marion having agreed on the day before that the bond of the bank as executor of the estate of William duPont should be fixed at a compromise figure of $10,000,000. Finally, on March 15, 1928, Mr. Medill, the incumbent president having resigned, William duPont, Jr., who was serving as a director, was elected president of Delaware Trust Company, a post he held until his death.

Plaintiff's aunt, Marion duPont Scott, his sisters, Jean Ellen duPont McConnell and Evelyn duPont Donaldson, and his brothers John E. duPont and William duPont, III, having intervened as party defendants, such additional parties have adopted the pleadings of the corporate defendants and have prayed for dismissal of the complaint.

Plaintiff has moved for summary judgment in his favor for the relief sought, namely rescission of the Hopeton transaction, the enjoining of the transfer or encumbering of stock of the Delaware Trust Company and the removal of such defendant as trustee. He is not seeking, according to his complaint, to surcharge the trustee for a claimed loss arising out of an investment in a non-legal security. In support of such motion, plaintiff relies on the present record, which includes interrogatories and answers thereto as well as depositions of the individual defendants and those of bank officials, and of the bank's attorneys past and present.

Defendants, on the other hand, have moved for partial summary judgment solely on the issue of the claimed legality of the Hopeton exchange transaction, taking the position that if their affirmative defenses of laches, statute of limitations, release, ratification and estoppel become critical issues in the case, such defenses must be developed at trial in light of the factual disputes already of record and the absence of relevant deposition testimony, including that of plaintiff. Compare Hutchinson v. Fish Engineering Corporation, 41 Del.Ch. 134, 189 A.2d 664. This is the opinion of the Court on the pending motions.

In attacking the Hopeton transaction in limine as violative of the reinvestment provisions of his grandfather's will, plaintiff relies primarily on the provisions of Item Nine of such will which reads:

"My said Trustee in making investments hereunder shall be limited to securities deemed to be legal investments for trust funds and shall be liable only for any loss which may result from its fraudulent or illegal conduct."

Seizing on such provision of the will of William duPont as a basis for an order directing the delivery to him of Delaware Trust Company shares upon the surrender by him of the equivalent in Hopeton shares, plaintiff, citing the principle that in the interpretation of wills the testator's

---

5. 5,825 common shares of Hopeton were in fact authorized and issued.

intent is paramount, Bird v. Wilmington Society of Fine Arts, 28 Del.Ch. 449, 43 A.2d 476 contends that Delaware Trust Company as trustee of the residue and remainder of such decedent's estate, while free to retain the non-legal investments held by William duPont during his lifetime and placed in trust by such testator, (Item Seven) and " . . . To invest and keep invested the said trust estate in income producing securities . . . " (Item Six) and ". . . to consult my children respecting investments of said trust estate hereafter made by the Trustee . . . " (Item Seven) and " * * * in its discretion to sell at any time at public or private sale all or any portion of said trust estate, real or personal . . ." (Item Eight), and to " . . . exchange shares of stocks or bonds for new shares of stocks or bonds in any reorganization, consolidation, combination, purchase or merger . . . " (Item Twelve), that Item Nine limited the trustee, in making new investments for such trust, to the type of securities listed in 25 Delaware Laws, Chapter 226, section 3 (Revised Code Delaware 1915, section 3875). Such statute provided in part:

> "Excepting where instruments creating trusts prescribe otherwise, trustees named in a will or appointed by the Chancellor, may hereafter invest the funds of their trusts in securities of the following classes and kinds, viz; "

Here follows a list of so-called legal securities in which common shares of private companies are not included. The concluding paragraph of such statute, however, permits investments in "(k) Such other securities as may be approved by the Chancellor."

Conceding that there is no language in the will of William duPont which would give the trustee discretionary power to go outside the list of legal investments without danger of incurring liability, Equi-

table Trust Co. v. Snader, 20 Del.Ch. 278, 174 A. 132, and that Hopeton common stock is not a so-called legal trust investment, defendants rely on the prudent man rule laid down in In re Cook's Trust Estate, 20 Del.Ch. 123, 171 A. 730, in which a beneficiary sought to establish a breach of trust on the part of the named trustee for investing in non-legals and asked that it be surcharged, a ruling which was followed in Wilmington Trust Co. v. Coulter, 41 Del.Ch. 548, 200 A.2d 441. In other words, defendants contend that Delaware Trust Company, while running the risk of surcharge as a result of investing in Hopeton common stock, was nonetheless not absolutely barred by Revised Code Delaware 1915 section 3875 from investing in non-legals. And I agree that the above cited cases hold that the statutes[6] having to do with so-called legal investments by trustees, at the times said cases were respectively decided, were permissive, and were applied in both such cases so as to hold that a trustee merely runs the risk of surcharge when he goes outside the statutory list and makes an unwise investment. Outright fraud or the performance of any illegal act on the part of a trustee, if proved, would, of course, call for a more extensive remedy for a trust beneficiary.

It is further clear that the question of whether or not a trustee has exercised a proper degree of care in making investments is to be decided in the light of contemporaneous circumstances and not in light of subsequent events. Thus, in In re Cook's Trust Estate, supra, in which the primary duty of a trustee is stated to be avoidance of the loss of trust principal and where the standard of an ordinary prudent man responsible for the investments of others was applied, the Court stated:

> "The effect of such permissive statutes is 'that if the trustees keep within the categories of investments named in the statute, they are afforded a protec-

---

**6.** "The language of the statute in its original as well as in its present form is phased in terms of permission. Being so, trustees are not now, as they were not before absolutely required to invest the trust funds in the so-called 'legals' enumerated in the statute" In Re Cook's Trust Estate, supra.

tion against surcharge due to loss which, had they stepped outside the authorized classes of investment, they might well be made to bear.' Wilmington Trust Co. v. Worth, 19 Del. Ch. 314, 167 A. 848, 850.

The Court continued:

"They (the investments) are to be judged, therefore, on their own merits and their fitness as trust investments is to be tested in the light of the general principles above stated without the aid of any statutory prescription."

Thus, if in the case at bar the testator had expressly directed his trustee in dealing with the residue and remainder of his estate to conform to the provisions of Revised Code Delaware 1915 section 3875, or as in In re Cook's Trust Estate had remained silent as to the type of investments to be made by his named trustee, then the authorities relied on by defendants would clearly control. However, as noted above, William duPont's instructions were that his trustee ". . . in making investments hereunder shall be limited to securities deemed to be legal investments for trust funds . . ." The critical question to be answered is accordingly the meaning of such instruction.

After due consideration of this crucial point, I conclude that the testator's direction to his trustee that its investments of trust property should be limited to legal investments for trust funds, if it is to have a rational meaning, must be tied directly to the statutory provisions concerning legal investments for trustees at the time of the probate of the will of William duPont, and there is no doubt but that such provisions are permissive, In re Cook's Trust Estate, supra. I therefore conclude that the 1928 Hopeton transaction was not invalid per se merely because it constituted an investment in non-legal securities as prescribed by the then applicable statute. It is also clear because advisory opinions will not be given that this Court would not have passed on the propriety of the Hopeton exchange in advance of its consummation, In re Con-

well, 13 Del.Ch. 55, 115 A. 309, despite the language of paragraph (k) of Revised Code of Delaware 1915 section 3875 which permits investments by trustees in "* * * such other securities as may be approved by the Chancellor." Finally, because of reference in the case at bar to the statute, there was no "express restriction" concerning investments as was the case in In re Kelsey's Estate, 393 Pa. 513, 143 A. 2d 42, in which the power of investment of the trustee was expressly limited, namely that it "shall not in any event include the right to invest in stocks . . ." See also Randolph v. East Birmingham Land Co., 104 Ala. 355, 16 So. 126, which involved a constitutional provision against investments by trustees in the stock of a private corporation.

Next to be considered is the question of whether the exchange in issue was a lawful step on the part of the trustee, viewed in light of other possible alternatives rather than an unnecessary and improper divestiture by Delaware Trust Company, as trustee, of its own stock, accomplished for the primary purpose of permitting William duPont, Jr., to take over control of the Delaware Trust Company, an objective such trust beneficiary clearly had in mind, Southerland deposition p. 46.

As noted earlier in this opinion, Revised Code Delaware 1915 section 1933, the applicable statute at the time of the transaction complained of, provided in part that a corporation might not vote its own stock directly or indirectly, and while plaintiff argues that this provision applies solely to treasury stock, doubt as to the right of a fiduciary to vote its own stock and thereby influence, or, in the case at bar, control the election of its own directors persisted in Delaware until the adoption of a 1967 amendment to 8 Del.C. section 160 which provided:

"Nothing in this section shall be construed as limiting the right of any corporation to vote stock, including but not limited to its own stock, held by it in a fiduciary capacity."

See Folk, The Delaware General Corporation Law, pp. 153–154. And while plaintiff relies on Revised Code Delaware 1915 section 1932 which provides in part: "Persons holding stock in a fiduciary capacity shall be entitled to vote the shares so held . . . .", such statutory language does not, of course, deal with the right of a fiduciary to vote its own shares.

I therefore conclude that the board of directors of Delaware Trust Company, following the death of William duPont, was faced with a real rather than a contrived problem when it was advised by counsel that the voting of its own stock held by it in the William duPont Trust raised " . . . a serious question . . .", and that Delaware Trust Company " . . . could not consistently vote its own shares especially where such stock constituted the control . . ." On the basis of such advice the bank took what it deemed to be appropriate action.

Delaware Trust Company could, of course, have attempted to sell such trust shares and have thus forfeited its right to receive the fees and commissions ultimately remitted to it as the named trustee under the will of William duPont, a large part of which fees and commissions have been passed on to the trust beneficiaries. Such named trustee could also have resigned and been succeeded by another trustee, thereby again forfeiting the fees and commissions which it ultimately earned, and there were perhaps other alternatives permissible under the will in view of the fact that plaintiff and the other remaindermen had no vested interest in specific property held in the remainder of their grandfather's estate.

In any event I am satisfied that under the provisions of the prudent man rule that the action taken by the bank directors in accepting the Hopeton proposal, which meant going outside the legal investments listed in the non-mandatory provisions of Revised Code Delaware 1915 section 3875, subjected the trustee only to the risk of such loss as may be found to have been caused to the trust property as a result of such unauthorized investment, In re Cook's Trust Estate, supra, and Bogert on Trusts and Trustees sections 681–688.

That there was a risk of disenfranchising the Delaware Trust Company shares held in trust in the duPont trust here in issue had their retention by the bank been decided on and that such risk was not a contrived stratagem is supported by the case of Cleveland Trust Co. v. Eaton, 21 Ohio St.2d 129, 256 N.E.2d 198, the same doubt having existed in such jurisdiction as to the right of a fiduciary to vote its own shares. In the cited case, however, the Supreme Court of Ohio, on the basis of a newly enacted statute granting a fiduciary the right to vote its own shares, provided that no conflict of interest existed, permitted the voting of such shares by a fiduciary, thus changing the law as it had existed at the time the decision in Cleveland Trust Co. v. Eaton, 11 Ohio Misc. 151, 229 N.E.2d 850, an earlier stage of the same case, had been reached in the Court of Appeals. When the shares held in trust constitute corporate control, as in the case at bar, the danger of self-dealing by directors is, of course, magnified.

Next, I am of the opinion that under the provisions of Items Eight and Nine of the William duPont will having to do with the sale of property placed in trust by such testator that Delaware Trust Company, as trustee, had the right to sell or exchange its own shares held in trust subject to the non-mandatory provisions of Revised Code Delaware 1915 section 3875. See Delaware Trust Company v. DuPont, 22 Del. Ch. 166, 194 A. 31. I am also of the opinion that the cases of Gareshe v. Levering, 146 Mo. 436, 48 S.W. 653, and Hilyard v. Leonard (Supr.Ct.Mo.) 391 S.W.2d 211, are not controlling because they have to do with contrived situations in which the conversion of a trust interest into another form was clearly unnecessary at a time when the administration of a trust estate had been virtually completed and merely

provided a means of having additional compensation paid to a trustee or established a stage for self-dealing. Compare contra Ash v. Ash, 126 N.J.Eq. 531, 10 A. 2d 150, and Rohne v. Horton, 180 Wash. 428, 40 P.2d 134.

Plaintiff goes on to contend that the defendant Delaware Trust Company committed an actionable breach of trust by failing to file a complaint for instructions from this Court on the question as to whether or not that portion of Revised Code Delaware 1915 section 1933, which provides " . . . provided further that shares of its own capital stock belonging to the corporation shall not be voted directly or indirectly * * * " prevented Delaware Trust Company as trustee from voting its own stock held in the duPont trust.

Assuming but not deciding that a complaint for instructions is a correct procedure for obtaining a judicial testing of a statute as opposed to the filing of a complaint seeking aid in construing claimed ambiguities or illegalities in a will, but see Greene, et al v. Mumford, 4 R.I. 313, and compare Delaware Bankers Assn. v. Division of Revenue (Del.Ch.), 298 A.2d 352, the directors of Delaware Trust Company, acting on advice of counsel, unanimously decided that the Hopeton exchange was a prudent step under the circumstances then presented, particularly the risk of having 58.35% of Delaware Trust Company's stock disenfranchised had the Hopeton exchange or some other scheme not been decided on designed to avoid a period of uncertainty in the management of Delaware Trust Company pending a final judicial determination of such corporation's right to vote its own stock. In any event, judicial approval was not sought, and the directors of Delaware Trust Company, protected by a $900,000 indemnity bond, proceeded to approve the Hopeton transaction.

■ I conclude that while the acquisition of Hopeton stock in exchange for Delaware Trust stock, share for share, was violative of Revised Code Delaware section 3875, no breach of trust calling for rescission of such transaction was committed by Delaware Trust Company inasmuch as the provisions of such statute were permissive, In re Cook's Trust Estate, supra, and, as noted above, Item Nine of William duPont's will concerning the limiting of investments by the trustee to legals, to have meaning, must be read with the terms of such statute in mind.

I am thus satisfied that the directors of Delaware Trust Company, in acting on advice of counsel in their approval of the Hopeton transaction, subject to an indemnity bond of $900,000 designed to save said directors harmless from any loss they might suffer

" * * * by reason of any judgment or decree of any Court or record finally adjudging or decreeing that the said shares of stock, or any of them so sold or transferred as aforesaid have been so sold to the said Hopeton Holding Corporation without due authority of law and without sufficient consideration . . . "

were not guilty of any fraudulent or illegal conduct or other action which should now be rescinded.

■ Next, plaintiff argues that at the time the Hopeton transaction was approved early in 1928 no guardian ad litem was appointed to represent his interests in the residue and remainder of his grandfather's estate. However, no suit was then pending concerning such remainder interest or those of other grandchildren, and, as noted above, none was necessary as long as the Delaware Trust Company was satisfied on advice of counsel and on receipt of a bond of indemnity that adoption of the Hopeton proposal was in the best interests of the corporation, the risk incurred being solely that of possible surcharge because of the making of a trust investment in a non-legal security.

■ Finally, inasmuch as plaintiff, by bringing this action, is having his day in court concerning the transaction of which

he complains, he cannot successfully claim that his constitutional rights to due process and equal protection of the laws have been denied.

As has been noted earlier in this opinion, plaintiff has not formally excepted to the nature of the investment made by Delaware Trust Company in Hopeton and is not seeking a surcharge as was the case in In re Cook's Trust Estate, supra. What he seeks rather is the entry of an order directing the delivery to him of:

> ". . . . such number of shares of Delaware Trust Company as he is entitled to receive under the Will of William duPont, Sr., upon the surrender by plaintiff of the shares of non-voting stock of Hopeton which were distributed to him in February, 1970."

For the reasons given I am of the opinion that plaintiff is not entitled to the form of relief which he seeks. It necessarily follows in light of the fact that the Delaware Trust Company did not commit a breach of trust of a fraudulent or illegal nature but rather, in making the Hopeton exchange under the prudent man rule for the purpose of avoiding a possible disenfranchising of its own stock held in trust, has merely run the risk of being held to account for a net loss on its objected to investment in Hopeton stock. It thus follows that plaintiff's prayer for removal of Delaware Trust Company as trustee must also be denied. Compare Bailey v. Sussex Trust Co., 41 Del.Ch. 57, 187 A.2d 825, and see 12 Del.C. sections 3506 and 3509 and Rule 133 Del.C.Ann.

There being no material issues of fact in dispute on defendants' motion for summary judgment to the effect that the Hopeton transaction is not subject to rescission on the present record, such motion will be granted. It follows that plaintiff's motion for summary judgment, as prayed for, must be denied.

An appropriate order may be submitted on notice.